(C. D. 1548)

## J. E. BERNARD & COMPANY, INC. v. UNITED STATES

United States Customs Court, Second Division

(Decided October 15, 1953)

*Wallace & Schwartz* (*Barnes, Richardson & Colburn* by *Edward N. Glad* of counsel) for the plaintiff.

*Warren E. Burger,* Assistant Attorney General (*William J. Vitale,* special attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: Two protests were consolidated for trial. They relate to certain parts of so-called gladirons.

The collector of customs classified the merchandise in both cases as parts of washing machines pursuant to the provisions in paragraph 353 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 353), as

modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, and duty was assessed thereon at the rate of 17½ per centum ad valorem.

Plaintiff contends that the imported articles are not parts of washing machines but are parts of electrical ironers and, hence, properly subject to duty at 15 per centum ad valorem in accordance with the terms of paragraph 353 of said act, as modified by said general agreement, as parts of articles having an essential electrical feature.

In the brief of defendant appears the following statement:

Defendant now abandons the classification by the collector and contends that the involved articles, being parts of household utensils, are properly dutiable as manufactures of metal not specially provided for under Paragraph 397, Tariff Act of 1930, as modified by T. D. 51802 and Paragraph 339 of said Act in keeping with the classification of similar parts involved in Protest 177160–K, etc., submitted to the court for determination simultaneously herewith.

## THE STATUTES

The pertinent provisions of paragraphs 353 and 397, as modified by T. D. 51802, read as follows:

[353] Articles suitable for producing, rectifying, modifying, controlling, or distributing electrical energy, and articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs; all the foregoing (not including electrical wiring apparatus, instruments, and devices), finished or unfinished, wholly or in chief value of metal, and not specially provided for:

Switches and switchgear which are not wiring apparatus, instruments, or devices; fans; blowers; and washing machines.     17½% ad val.

\*  \*  \*  \*  \*  \*  \*

Other articles (except machines for determining the strength of materials or articles in tension, compression, torsion, or shear; flashlights; batteries; vacuum cleaners; and internal-combustion engines).     15% ad val.

[353] Parts, finished or unfinished, wholly or in chief value of metal, not specially provided for, of articles provided for in any item 353 of this Part.     The same rate of duty as the articles of which they are parts.

[397] Articles or wares not specially provided for, whether partly or wholly manufactured:

\*  \*  \*  \*  \*  \*  \*

Composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal (not including platinum, gold, or silver), but not plated with platinum, gold, or silver, or colored with gold lacquer:

\*  \*  \*  \*  \*  \*  \*

Other (except slide fasteners and parts thereof) __ 22½% ad val.

Paragraph 339 of the Tariff Act of 1930 provides:

PAR. 339. Table, household, kitchen, and hospital utensils, and hollow or flat ware, not specially provided for: Plated with platinum or gold, 65 per centum ad valorem; plated with silver, 50 per centum ad valorem; composed of iron or steel and enameled or glazed with vitreous glasses, 5 cents per pound and 30 per centum ad valorem; composed wholly or in chief value of aluminum, 8½ cents per pound and 40 per centum ad valorem; composed wholly or in chief value of copper, brass, steel, or other base metal, not plated with platinum, gold, or silver, and not specially provided for, 40 per centum ad valorem; the foregoing rates shall apply to the foregoing articles whether or not containing electrical heating elements as constituent parts thereof.

As the case is submitted to us the following questions are presented: (1) Do the importations consist of parts of articles having as an essential feature an electrical element or device within the meaning of said paragraph 353; (2) are they parts of household utensils; and (3) if they are parts of household utensils—for which there is no specific provision in paragraph 339, *supra*—should they be classified as articles of metal, not specially provided for, in paragraph 397, *supra*, or as parts of articles having an essential electrical element or device, as provided in said paragraph 353?

The basic facts of the case are not disputed, but only their legal implications.

Frank Pollaczek, the only witness in the case, was called by plaintiff. He testified that for the last 4 years he had been the import and export manager of the Thor Corp., the ultimate consignee of the merchandise in controversy. He identified a sample of an extension board blank, complete with hardware, received in evidence as exhibit 1, which was conceded to be in chief value of metal.

Pollaczek's testimony further establishes that after importation the articles are painted and then assembled in ironing machines, known as gladirons, which are graphically described in illustrative exhibit 2. The extension boards or wings are essential parts of a gladiron as they serve the convenience of the operator, forming a platform on which to spread out fabrics to be ironed and permit a steady flow of the fabrics to the iron. In the process of ironing, the material is placed between a roll, turned by a motor, and the heating element of the gladiron, which is in a so-called shoe placed above the roll and identified by the letter "Y" on illustrative exhibit 2. The electrical features of a gladiron are a motor which drives the roll and the heating element in the so-called shoe. It appears further that the gladiron can operate only by means of electricity and that the machine is used exclusively for the purpose of ironing laundry in the home.

It is not disputed that a gladiron, as above described, answers the call of both paragraphs 353 and 339, *supra*. It responds to the terms of paragraph 353 in that it is an article having as an essential feature

an electrical device, such as the exemplar articles specifically enumerated in that paragraph. *United States* v. *Dryden Rubber Co.*, 22 C. C. P. A. (Customs) 51, T. D. 47050. It meets the terms of paragraph 339 in that a gladiron is an article of utility used only in the home for the convenience and comfort of the householder and is, therefore, a household utensil within the meaning of paragraph 339, *supra*, which provides for household utensils, not specially provided for, and whether or not "containing electrical heating elements as constituent parts thereof."

However, the articles in controversy are merely parts of household utensils and paragraph 339 contains no provision for parts. Hence, they cannot be classified in paragraph 339.

Paragraph 353 provides not only for articles having an essential electrical feature but also for parts thereof and, doubtless for that reason, the collector of customs so classified the two importations with which we are here concerned. Defendant, however, in its brief, seeks to abandon the collector's classification and contends that the imported articles, being parts of household utensils, which as above indicated are not provided for in paragraph 339, should be relegated to paragraph 397, as modified, *supra*, and classified as articles or wares, not specially provided for, composed in chief value of metal. It is apparent that the articles in issue were improperly classified as parts of washing machines in view of the uncontradicted evidence that the articles of which the imported items are parts are in fact ironers.

In support of defendant's theory of the case, reliance is placed upon decisions of this court in *Bolinders Co. (Inc.)* v. *United States*, 63 Treas. Dec. 399, T. D. 46221, and *Rothschild, Meyers & Co.* v. *United States*, 30 Treas. Dec. 405, Abstract 39374. In the *Bolinders* case, merchandise described as mincing machines and parts thereof had been classified as kitchen utensils in paragraph 339 of the Tariff Act of 1922. However, plaintiff in that case limited its protest to that portion of the merchandise described as plates shown to be indispensable parts of meat-cutting machines which were claimed to be properly subject to classification as parts of machines in paragraph 372 of the act of 1922. The court was of the opinion that "There being no provision in paragraph 339 for parts of kitchen utensils, the plates in question are properly classifiable as manufactures of metal, not specially provided for, * * * under paragraph 399." No reason was assigned by the court, however, for not classifying the plates as parts of machines, not specially provided for, in paragraph 372 of said act, and an examination of the record in the *Bolinders* case discloses that no briefs were filed on that phase of the controversy. Consequently, we do not regard that case as controlling of the issue here.

In the *Rothschild* case, the question arose as to whether certain pot covers composed of enameled iron or steel should be classified as hollowware pursuant to the provisions of paragraph 134 of the Tariff Act of 1913. The Government there contended that irrespective of whether the articles may have been imported as separate dutiable entities, or as parts of accompanying pots, they should be regarded as entireties and classified as hollowware. This court, applying the fundamental rule of customs law that imported merchandise must be treated for classification purposes in the precise condition in which it arrives in this country, found that the pot covers formed no part of any other article in the same shipment and that while they might be deemed to properly constitute parts of hollowware there was no provision in the tariff act for such parts, and they were relegated to the provision for articles or wares of metal, as provided in paragraph 167 of said act, there being no other provision which embraced them. We find nothing in the factual or legal aspects of that case which in any way affects the conclusion we have reached herein.

Upon the record before us, it is obvious that the importations in controversy are parts of articles which in their entirety respond to the descriptive terms of both paragraphs 339 and 353, *supra*, but since Congress did not see fit to provide for parts of household utensils in paragraph 339 and did provide for parts of articles having as an essential feature an electrical element or device in paragraph 353, we are of the opinion that the merchandise should be classified as parts of articles having as an essential feature an electrical element or device and assessed with duty at 15 per centum ad valorem pursuant to the terms of paragraph 353, as modified, *supra*, as claimed by plaintiff. *United States* v. *Dryden Rubber Co.*, *supra*. To that extent, the protests of plaintiff are sustained.

Judgment will be entered accordingly.