No. 66856.—Seprol, Inc., and Sopac Transport Corp. *v.* United States, protests 60/6705 and 60/6706 (New York).

RAO, Judge: The two cases listed in the schedule of protests, which have been consolidated for purposes of trial, raise the question of the proper dutiable classification of certain imported face massagers or cosmetic applicators. This merchandise was classified by the collector of customs at the port of entry as household utensils, within the scope of paragraph 339 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, with the consequent assessment of duty at the rate of 17 per centum ad valorem.

It is the claim of plaintiffs that said merchandise is more specifically provided for in paragraph 353 of said act, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, at the rate of 13¾ per centum ad valorem, as articles having as an essential feature an electrical element or device.

The competing provisions of law, insofar as here applicable, read as follows:

Paragraph 339, as modified by T.D. 54108, *supra*:

Table, household, kitchen, and hospital utensils, and hollow or flat ware, not specially provided for, whether or not containing electrical heating elements as constituent parts:

| * | * | * | * | * | * | * |
|---|---|---|---|---|---|---|

Not plated with platinum, gold, or silver, and not specially provided for, composed wholly or in chief value of—

| * | * | * | * | * | * | * |
|---|---|---|---|---|---|---|

Other base metal:

| * | * | * | * | * | * | * |
|---|---|---|---|---|---|---|

Other _____ 17% ad val.

Paragraph 353 and T.D. 52739, *supra*:

Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, finished or unfinished, wholly or in chief value of metal, and not specially provided for:

\* \* \* \* \* \* \*

Other (except \* \* \*) _____ 13¾% ad val.

The case has been presented for decision upon a representative sample of the subject merchandise, plaintiff's exhibit 1, and an agreed statement of facts, plaintiff's exhibit 2, which reads as follows:

IT IS HEREBY STIPULATED, CONSENTED, AND AGREED that the above referenced protests shall be combined and presented together to the Court on the following stipulated facts.

1. That the imported merchandise in question consists of an electric motor encased in a nylon housing; that attached to the armature thereof is a short nylon arm with an aperture in the end adapted to receive nylon buffers; that when imported, the item is packed in a plastic case containing an addition to the motor just described an electrical cord and a set of eight small buffers. A representative sample thereof is annexed hereto as Exhibit 1.

2. That the merchandise is used for the purpose of applying to the skin and removing therefrom make-up, astringents and cleansers by women and that it is used by immersing the buffer in the cosmetic to be applied, inserting the buffer so immersed into the aperture in the arm and applying the buffer to the skin while the same is vibrating at a high rate of speed.

3. The merchandise is not adapted to any mode of power other than that of an electric motor.

4. The make-up applicator is used primarily in the home for the application and removal of make-up. The article is additionally used by professional users such as beauty parlors, salesmen, and demonstrators.

It would appear from the stipulated facts that the involved face massagers respond to the designations of both provisions in controversy, in that they are primarily used in the household for the convenience and comfort of its members, to wit, for the application and removal of cosmetics, and that they possess as an essential operating feature an electrical element or device, to wit, an electric motor. Consequently, and unless there be merit to the contention of the defendant that the articles at bar are not, *ejusdem generis* with the named exemplars in paragraph 353, as modified, *supra*, we are called upon to determine the relative specificity of the two provisions as applied to the subject items. In this inquiry, we are guided, if not concluded, by the cases of *United States* v. *Electrolux Corporation*, 46 C.C.P.A. (Customs) 143, C.A.D. 718, and *Bruce Duncan Company, a/c Sims-Worms* v. *United States*, 45 Cust. Ct. 85, C.D. 2202, wherein it was held, in connection with electric floor polishers and electric vacuum brushes, respectively, that the provision for "articles having as an essential feature an electrical element or device," in said paragraph 353, is more closely descriptive and, hence, more specific than the provision for household utensils in paragraph 339, *supra*.

Seemingly, counsel for defendant neither contests the rule of the cited cases nor disputes that the articles at bar possess an essential electrical feature, which latter fact should normally suffice to invoke the rule therein applied. The position taken by defendant is that not every article with an essential electrical feature finds classification in paragraph 353, but such only as are of the same kind or character and, therefore, are *ejusdem generis* with the articles named therein. The case of *United States* v. *S. P. Skinner Co., Inc.*, 46 C.C.P.A. (Customs) 105, 108, C.A.D. 708, is cited for the proposition that the doctrine of

*ejusdem generis* is applicable in the construction of the portion of paragraph 353 with which we are here concerned, and would operate to exclude the instant merchandise from its scope.

While it is true that the court, in the *Skinner* case, *supra*, recognized the relationship of *ejusdem generis* to the language of the instant provision in paragraph 353, it is equally true that it recommended a very liberal approach to the application of that principle, in view of the wide variety of articles *co nomine* specified and the apparent lack of similar characteristics identifying them. This, we think, is apparent from the court's full discussion of the matter, which reads as follows:

> As correctly pointed out by the Government, the Customs Court did not hold the imported articles to be "such as" any one of those named in paragraph 353, but the court was apparently of the opinion that in view of the wide variety of articles named, the doctrine of *ejusdem generis* should be given a liberal application. In support of its holding the court noted that, by trade agreement, batteries and television apparatus have been held to be within the purview of that paragraph although they clearly are not, in a narrow sense, *ejusdem generis* with any one of the exemplars.

We are in agreement with the conclusion reached by the Customs Court as to paragraph 353. Obviously there are wide differences in size, value, use, and method of operation between locomotives, portable tools, refrigerators, and signs, all of which are named in the paragraph, and it seems evident that Congress intended to include a wide range of articles, of which those named were merely exemplary. In our opinion it would defeat the purpose of the paragraph to include in it only such articles as had a close correspondence to some particular one of the wide variety listed.

We concur in the Government's position that the rule of *ejusdem generis* is not to be so loosely applied to paragraph 353 as to permit the inclusion of every article having an electrical element or device as an essential part, since such an application would render the naming of the exemplars useless and would be at variance with the decision in *John A. Steer & Co.* v. *United States*, 24 C.C.P.A. 293, T.D. 48737, where it was held that an anhydrous ammonia plant was not classifiable under paragraph 353, notwithstanding the fact that an electrical element was required to initiate its operation. As above noted, however, the wide variety of articles named calls for a correspondingly liberal application of the *ejusdem generis* rule. In our opinion the rule to be applied was correctly stated in *United States* v. *Dryden Rubber Co.*, 22 C.C.P.A. 51, T.D. 47050, as follows:

> On the other hand, if, when the article is imported, it is so constructed as to utilize electrical power solely and, therefore, is, essentially, an electrical article, and its various parts as imported, are intended to be used and are used, together, as was the case with the imported merchandise, then no reason is seen why it cannot be considered, for dutiable purposes, within the scope of the third division of this paragraph (paragraph 353) for in such case, we think the article should be held to be included within the class of articles named in the paragraph.

Furthermore, consideration of the case of *John A. Steer & Co.* v. *United States*, to which reference was made in the quoted portion of the *Skinner* decision, *supra*, supports the view that the only consistent element in the wide variety of articles named in paragraph 353 is that they are all "devices which are operated electrically, and which are able to function because of their electrical elements," as distinct from articles whose continued operation does not depend upon an electrical element. Since this is the common characteristic possessed by the many different items specified, it must constitute the foundation upon which *ejusdem generis* must rest.

As respects this characteristic, it seems perfectly fitted to the subject articles. They are not adapted to any mode of power other than electricity; are able to function only because of their electrical motor; and depend upon that electrical feature for their continued operation.

In view of the foregoing, we do not deem it necessary to consider any further similarity of character between the instant merchandise and the articles specified in the provision. However, since counsel for defendant urges insistently that "the applicators at bar are very *dissimilar* in kind to any of the articles named in paragraph 353" [italics quoted], it is not inappropriate to add that, to the extent that Christmas wreaths with electric lights have been held to be electrical devices such as signs, *United States* v. *N. Minami & Co., Inc.*, 29 C.C.P.A. (Customs) 169, C.A.D. 188, and electric floor polishers have been likened to electric fans, ranges, washing machines, and refrigerators, *United States* v. *Electrolux Corporation, supra,* then, the involved face massagers may be said to resemble portable tools. In a sense, that is really what they are. They are portable instruments, with removable, interchangeable buffers for applying astringents, cleansers, and cosmetics, and, hence, instruments "of manual operation * * * used to facilitate mechanical operations." See Webster's New Collegiate Dictionary, second edition, 1951.

We conclude, therefore, that the instant electrical face massagers are provided for in paragraph 353 of the Tariff Act of 1930, as modified, *supra,* as articles having as an essential feature an electrical element or device, which are dutiable at the rate of 13¾ per centum ad valorem. The claim in the protests to that effect is sustained. All other claims are, however, overruled.

Judgment will be entered accordingly.