BEFORE THE SECOND DIVISION, SEPTEMBER 8, 1964

**No. 68758.**—Verity Southall, Ltd., et al. *v.* United States, protests 60/4556, etc. (Los Angeles).

FORD, Judge: These protests, consolidated for the purpose of trial, are directed against the classification of certain metal items used for the manufacture of pepper mills and known as male and female pepper mill grinders. The merchandise was assessed with duty at the rate of 19 per centum ad valorem under the provisions of paragraph 397 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, as other articles, not specially provided for, in chief value of iron or steel.

The position of plaintiffs herein is that said merchandise is parts of machines and is claimed in the alternative to be properly dutiable at 12½ per centum ad valorem as parts of food grinding machines, or at 11½ per centum ad valorem as parts of other machines, not specially provided for, within the purview of paragraph 372 of the Tariff Act of 1930, as modified by said sixth protocol.

The pertinent portions of the provisions involved herein are as follows:

Paragraph 397 of the Tariff Act of 1930, as modified by T.D. 54108:

Articles or wares not specially provided for, whether partly or wholly manufactured:

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

 Composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal (except lead), but not plated with platinum, gold, or silver, or colored with gold lacquer:

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

  Other, composed wholly or in chief value of iron, steel, brass, bronze, zinc, or aluminum (except * * *) _____ 19% ad val.

Paragraph 372, as modified by T.D. 54108:

Machines, finished or unfinished, not specially provided for:

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

 * * * food grinding or cutting machines; * * *_____ 12½% ad val.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

 Other (except * * *)_____ 11½% ad val.

Parts, not specially provided for, wholly or in chief value of metal or porcelain, of any article provided for in any item 372 in this Part_____ The rate for the article of which they are parts.

The record herein consists of the testimony of one witness called on behalf of plaintiffs, a stipulation entered into by and between counsel for the respective parties that the said merchandise is in chief value of base metal, and a sample of the male and female grinder set with the male portion attached to a metal

shaft which is manufactured in the United States, which was received in evidence as plaintiffs' illustrative exhibit 1, as well as a finished pepper mill received as plaintiffs' illustrative exhibit 2.

The witness, Mr. Harry E. Howard, president of plaintiff, testified that his company is a manufacturer of pepper mills, spice grinders, and food grinders; that the grinding units all come in one size irrespective of the type or size of pepper mill it is to be utilized in; that after importation the female member of the grinder is fitted into a housing and the male section is affixed to a spindle; that the housings are made of wood or metal; and that there are some 164 variations of pepper mills, one made by him was 6 feet tall and sold to a restaurant in Dallas.

The witness further testified that the pepper mills grind pepper or other spices when hand energy is applied to the movable top portion of the mill which causes the contents in the machine to be moved further into the grinding set; that the pepper is then ground and dispensed out of the bottom of the pepper mill; that the knob on the top adjusts the amount to which the peppers are to be ground; that somewhat less than half are sold to restaurants and that 99 percent of the pepper mills sold in retail stores are for use in the home.

Based upon the record as made herein, plaintiffs make the following statement in their brief:

There can be little doubt that the various sizes of peppermills into which the grinder sets here involve[d] go are mechanical contrivances which utilize and modify force or energy and therefore are machines. In fact its function is similar to most food grinding machines such as involved in *Martin R. Jager* v. *United States*, 46 Treas. Dec. 767, Abst. 48421 and there held to be machines.

In the *Jager* case, *supra*, the merchandise under consideration was machines for grinding meat, vegetables, etc., and were described as follows:

* * * Each consists of a receptacle or hopper in which the material to be ground is placed, a spiral screw which revolves and forces the material along, and incidentally to some extent crushes it, a handle or crank which turns the shaft on which the spiral piece is mounted, a knife that is mounted at the other end of the spiral piece and turns with it, and a plate with holes in it, against which the revolving knife is pressed. It is a mechanism of considerable bulk, with numerous intersecting parts which automatically, upon the mere turning of the crank, force the material along, grind it to a fineness predetermined by the size of the holes in the plate, and deliver it in finished condition outside the apparatus. It transmits power from the handle to the knife and communicates motion to the material itself, and it so applies the mechanical power employed as to alter the condition of the material. * * *

Obviously, the machine involved in the *Jager* case, *supra*, bears no resemblance to the imported merchandise and operates in an entirely different manner. The record herein falls short of establishing, in our opinion, that the completed pepper mill, such as in the form of exhibit 2, is a machine. While it is true that many items have been held to be, or not to be, "machines," there is no "judicial determination" of what a machine is. It remains simply a question of common meaning and each case must be decided on the basis of its own facts. *United States* v. *Idl Mfg. & Sales Corp.*, 48 CCPA 17, C.A.D. 756; *Nord Light, Inc.* v. *United States*, 49 CCPA 12, C.A.D. 786.

In *The Durst Mfg. Co., Inc.* v. *United States*, 50 CCPA 56, C.A.D. 820, the court quoted from the *Nord Light* case, *supra*, wherein the following statement was made:

A common meaning of the word "machine," found in the dictionaries which we referred to in the *IDL* case, *supra*, is a device which may be either simple or complex, whose function is to increase the intensity of an applied force, *or to*

*change its direction, or to change one form of motion or energy into another form.* [Emphasis quoted.]

We do not believe that a pepper mill such as plaintiffs' illustrative exhibit 2 which utilizes the imported parts, falls within the common meaning of the term "machine." Accordingly, the imported male and female grinders are not parts thereof.

Although the record indicates that 99 percent of the imported grinders when incorporated in pepper mills and sold to retail stores are used in the household, they are not subject to classification under the provisions of paragraph 339 of the Tariff Act of 1930, which contains no provision for parts. The involved importations are nothing more than parts and, accordingly, even when assembled, if chiefly used in the household, are not subject to classification thereunder. *J. E. Bernard & Company, Inc.* v. *United States,* 31 Cust. Ct. 86, C.D. 1548, affirmed *Same* v. *Same,* 42 CCPA 141, C.A.D. 586.

In view of the foregoing and following the authorities cited herein, we find the imported grinders to be properly subject to classification under the provisions of paragraph 397, Tariff Act of 1930, as modified, *supra,* and as such dutiable at the rate of 19 per centum ad valorem. The protests are, therefore, overruled.

Judgment will be entered accordingly.