(C.D. 3794)

SUNBEAM CORPORATION v. UNITED STATES

United States Customs Court, Second Division

(Decided April 21, 1969)

*Barnes, Richardson & Colburn* (*Joseph Schwartz, Earl R. Lidstrom*, and *James S. O'Kelly* of counsel) for the plaintiff.

*William D. Ruckelshaus*, Assistant Attorney General (*Charles P. Deem* and *Irving A. Mandel*, trial attorneys), for the defendant.

Before RAO, FORD, and ROSENSTEIN, Judges

ROSENSTEIN, Judge: Plaintiff claims herein that certain merchandise, invoiced as soleplate and switch assemblies,[1] which was classified as manufactures in chief value of aluminum, not specially

---

[1] In its brief, plaintiff abandoned its claim relating to merchandise other than soleplate and switch assemblies.

provided for, under paragraph 397, Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108, and assessed with duty thereunder at 19 per centum ad valorem, is properly classifiable under paragraph 353 of said act, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739, as articles having as an essential feature an electrical element or device, which takes a duty rate of 13¾ per centum ad valorem.

The competing tariff classifications are as follows:

Paragraph 397, as modified by T.D. 54108:

> Articles or wares not specially provided for, whether partly or wholly manufactured:
>
> \*　　\*　　\*　　\*　　\*　　\*　　\*
>
> Other, composed wholly or in chief value of iron, steel, brass, bronze, zinc, or aluminum (except \* \* \*) _____ 19% ad val.

Paragraph 353, as modified by T.D. 52739:

> Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, finished or unfinished, wholly or in chief value of metal, and not specially provided for:
>
> \*　　\*　　\*　　\*　　\*　　\*　　\*
>
> Other (except \* \* \*) _____ 13¾% ad val.

The evidence of record establishes that the soleplate and switch assemblies, which, concededly, are metal parts of electric irons used in the household, contain essential electrical elements.[2]

Both parties agree that the electric irons, of which the imported articles are parts, are classifiable under paragraph 339 as household utensils, but that, as the paragraph has no provision for parts, the items at bar are not classifiable thereunder. Paragraph 339 provides for "Table, household, kitchen, and hospital utensils, and hollow or flat ware, not specially provided for" at rates varying according to their metal content; and provides further that "the foregoing rates shall apply to the foregoing articles whether or not containing electrical heating elements as constituent parts thereof."

The collector of customs has classified the imported goods under the "basket provision" of paragraph 397. Plaintiff contends, however, that

---

[2] The vice president in charge of manufacturing for the importer testified that a steel-sheathed electrical resistance wire is cast in the soleplate, which operates on 110-volt house current. As the electricity passes through this wire element, it heats the soleplate to a temperature sufficient for ironing. The switch assembly, which is attached to the soleplate, contains a bimetal thermostat that responds to the temperature of the soleplate. The lever on the switch is adjusted by the customer to supply a specific temperature. None of the parts functions separately until assembled into an iron. The soleplate and switch assemblies are occasionally sold separately as replacement parts.

although they are parts of irons they are also "articles" within the intendment of paragraph 353.

We hold that the soleplates and switch assemblies at bar are not such "articles" within the contemplation of paragraph 353 and, accordingly, sustain the collector's classification.

To understand the present posture of the parties in this case and our resolution of the issue herein, it will be helpful to review some of the legal principles regarding classification of merchandise under paragraphs 339 and 353.

It is now settled law, since *United States* v. *Electrolux Corporation*, 46 CCPA 143, C.A.D. 718 (1959), that articles such as the electrical floor polisher involved therein are more specifically provided for as articles having as an essential feature an electrical element or device in paragraph 353 than as household utensils in paragraph 339. The principle of that case has been followed with respect to battery-operated hand vacuum brushes in *Bruce Duncan Company, a/c Sims-Worms* v. *United States*, 45 Cust. Ct. 85, C.D. 2202 (1960); household electrical food juicers in *Rotel Corp. of America et al.* v. *United States*, 46 Cust. Ct. 538, Abstract 65798 (1961); electrically operated face massagers or cosmetic applicators in *Seprol, Inc., and Sopac Transport Corp.* v. *United States*, 48 Cust. Ct. 480, Abstract 66856 (1962); Christmas tree lanterns in *John A. Steer Company* v. *United States*, 53 Cust. Ct. 229, Abstract 68673 (1964); and battery-operated mixmasters in *F. B. Vandegrift & Co., Inc.* v. *United States*, 53 Cust. Ct. 231, Abstract 68674 (1964).

The appellate court, however, added the following *caveat* in *Electrolux*, at page 147:

> * * * It is not necessary or proper here to speculate as to what electrical appliances were intended to be left in paragraph 339 but it is possible that the continuation in that paragraph of the phrase "containing electrical heating elements as constituent parts," which was in the 1922 Act, has a bearing on the matter.
> * * *

The issue as to whether household utensils containing electrical heating elements are more specifically provided for in paragraph 339 or in the aforesaid provision of paragraph 353 was placed squarely before this court in *Kotake Co., Ltd., American Customs Brokerage Co.* v. *United States*, 58 Cust. Ct. 196, C.D. 2934 (1967).[3] In that case, plaintiff challenged the classification under paragraph 339 of electric automatic rice cookers containing electrical heating elements essential

---

[3] Prior to the *Electrolux* decision, this court had considered the tariff status of electric broilers in *Cary & Skinner, Inc.* v. *United States*, 24 Cust. Ct. 347, Abstract 53949 (1950), classified under paragraph 339 and claimed dutiable under paragraph 353 as cooking stoves. In finding that plaintiff had failed to sustain its claim, we noted our doubt that the articles could be removed from the provisions of paragraph 339 in view of the concluding proviso therein that "the foregoing rates shall apply to the foregoing articles whether or not containing electrical heating elements as constituent parts thereof."

to their operation, claiming that paragraph 353 was more specific. This court, after reviewing the legislative history of both paragraphs, concluded that Congress did not intend paragraph 353 to preempt the classification of all articles having an essential electrical heating element, and affirmed the classification, stating, at page 201:

> The electrical heating element portion of paragraph 339 dates back to the Tariff Act of 1922 which imposed an additional duty of 10 per centum ad valorem on household utensils, *inter alia*, "containing electrical heating elements as constituent parts thereof." In the Tariff Act of 1930, the additional duty was eliminated and the phrase "whether or not containing electrical heating elements" was inserted. Clearly, this was no perfunctory reenactment of prior law. It indicates a considered conscious purpose to retain in paragraph 339 household utensils with electrical heating elements. Coupled with the statement in Senate Report No. 37, *supra*, this revision of paragraph 339 suggests that Congress was cognizant of the potential conflict between the two provisions here in issue and sought to resolve it by indicating its intent to continue to provide in paragraph 339 at least for those household utensils which are equipped with an electrical heating element.

Applying the rationale of *Kotake, supra*, the soleplates and switch assemblies before us are parts of irons which, having electrical heating elements as constituent parts, come within the class of articles provided for in paragraph 339; however, they are not classifiable under this paragraph as it has no parts provision. *United States* v. *J. E. Bernard & Company, Inc.*, 42 CCPA 141, C.A.D. 586 (1955); *William Adams, Inc.* v. *United States*, 56 Cust. Ct. 429, C.D. 2670 (1966); *Verity Southall, Ltd., et al.* v. *United States*, 53 Cust. Ct. 266, Abstract 68758 (1964). How, then, should they be classified?

Initially, our appellate court, in *United States* v. *J. E. Bernard & Company, Inc., supra*, affirmed the judgment of this court in *J. E. Bernard & Company, Inc.* v. *United States*, 31 Cust. Ct. 86, C.D. 1548 (1953), holding that parts of gladirons (electric household ironing units) are parts of household utensils provided for in paragraph 339, but, in the absence of a provision for parts therein, are properly dutiable as parts of articles having essential electrical features under paragraph 353 rather than as manufactures of metal, not specially provided for, under paragraph 397.

Subsequently, the court of appeals reversed its position in *Bernard, supra*, in *United States* v. *Lyons Transport*, 45 CCPA 104, C.A.D. 681 (1958), involving a parallel situation. In that case, steel type, admittedly parts of typewriters, was classified as metal articles, not specially provided for, under paragraph 397 on the ground that paragraph 1791, which *eo nomine* designates typewriters, has no provision for parts. As typewriters are machines, plaintiff claimed the type to be properly dutiable as parts of machines under paragraph 372.

The court held that the only parts dutiable under paragraph 372 are parts of machines provided for therein; and that the latter does not include typewriters which are denominated in paragraph 1791. The court stated, at page 108:

> * * * In the *Bernard* case, this court did not expressly state that gladirons as such would be dutiable under paragraph 339. It merely held that parts of gladirons were dutiable under paragraph 353. If gladirons as such were properly dutiable under paragraph 339, the *Bernard* case could not be reconciled with this case. The decision in the instant case is so clear that, if such were the case, we would be forced to overrule the *Bernard* case. We do not deem it necessary, however, to decide the proper classification of gladirons at this time. To the extent that the *Bernard* case is inconsistent with the instant case, it is overruled.

Plaintiff herein does not dispute the holding in *Lyons, supra,* but contends that the parts at bar are themselves articles having essential electrical features within the purview of paragraph 353, and cites the opinion in *William Adams, Inc.* v. *United States,* 56 Cust. Ct. 429, C.D. 2670 (1966), in support thereof.

The merchandise in that case consisted of glass dishes and plates with holes drilled through the bottom at the center which, after importation, were attached to metal bases and sold as salad bowls, cake plates and similar household articles. They were classified under the carved-out provision of paragraph 218(f), as modified by T.D. 51802, for "Table and kitchen articles * * *, composed wholly or in chief value of glass * * *". The court found, upon the record therein, that they were finished parts of household articles; and that, as paragraph 218(f) as *modified, supra,* has no parts provision, they were classifiable under 218(f) as modified by T.D. 53685, calling for "All articles (not including table and kitchen articles and utensils) of every description not specially provided for, composed wholly or in chief value of glass, * * * decorated * * * other, valued not over $1.66⅔ each * * *".[4] The court responded to defendant's argument that merchandise consisting of parts of 218(f) articles cannot also be considered as other articles within that paragraph as follows, at pages 438–439:

> * * * Certainly an article may be considered under one frame of reference to be but a part of a different article and yet, within another frame of reference, constitute a complete article in itself. * * * The term "articles" can have varying meanings depending upon the context, scope, or purpose of the tariff provision. The language of paragraph 218(f) is clear and unambiguous and we have held that there is no reason to construe

---

[4] The court had previously held, in the incorporated case of *William Adams, Inc.* v. *United States,* 51 Cust. Ct. 126, C.D. 2419 (1963), that similar glass articles were, in fact, unfinished articles dedicated to use as household and table articles and therefore, dutiable under paragraph 218(f) as modified by T.D. 51802, as household and table articles.

it other than as written. *Koscherak Bros.* v. *United States, supra.* The term "all articles of every description" appearing in the involved tariff provision, while construed to be narrower than a competing provision for "manufactures of," is, nevertheless, fairly broad, inclusive language. There is no dependency upon chief use as with the term "table and household articles." The glass items in this case, at the time of their importation, had reached their ultimate stage of readiness, that is, they had obtained the form, shape, design, and finish necessary to acquire commercial identity in retail market places. Although ordinarily sold in assemblies of glass and metal units, they obviously possess such structural finish so as to permit acquisition and use as additional or replacement parts of assemblies previously purchased. As such, they can be considered glass articles within the modified provision of paragraph 218(f) for all glass articles of every description.

We agree with defendant that the rationale of the *William Adams* case, *supra*, is inapposite to the merchandise at bar and to the classification contended for herein. The provision of paragraph 218(f), as modified by T.D. 53865, for "All articles * * * of every description not specially provided for, * * *" is broader than that of paragraph 353 for "Articles having as an essential feature an electrical element or device, *such as* electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, * * *".

The latter provision is broad in scope, which is apparent from the disparate and diverse nature of the articles named therein; but it was not intended to be universal in its application. If Congress had intended to provide for *all* metal articles having an essential electrical feature and not specially provided for, it would have omitted the "such as" clause. The provision encompasses only those "articles"[5] having essential electrical features which are *ejusdem generis* with the exemplars named therein.

Our appellate court stated in *John A. Steer & Co.* v. *United States*, 24 CCPA 293, 299, T.D. 48737 (1936):

> * * * As we have before stated in the *Dryden Rubber Co.* case, *supra*, while these articles thus named differ much from each other, still they are typical of the congressional intent. So, in

---

[5] In *Close and Stewart* v. *United States*, 58 Cust. Ct. 350, 354, C.D. 2985 (1967), involving merchandise held not to be an article within the intendment of paragraph 353, we stated, with respect to the meaning of the term "article":

> * * * For the word "article" is itself a nebulous concept seemingly employed in the tariff act for the very reason that it possesses an indefinite and neutral meaning. Its vagueness is best exemplified in Webster's New International Dictionary (2d edition, 1951) wherein the word is defined as:
> 6. A thing of a particular class or kind, as distinct from a thing of another class or kind: * * *.

Consequently, it serves no valid purpose to speculate upon the proposition of whether, in employing the term "article" in a given provision, Congress intended a broad rather than a narrow interpretation of the term. Its frequent use in tariff statutes suggests instead an intention that it assume the meaning and coloration appropriate to its specific context and best suited to effectuate the congressional plan.

measuring the applicability of the language of said paragraph 353 to the imported apparatus we must have in mind whether the imported apparatus is of the type or types named in the statute. * * *

and in *United States* v. *S. P. Skinner Co., Inc.*, 46 CCPA 105, 108, C.A.D. 708 (1959) :

We concur in the Government's position that the rule of *ejusdem generis* is not to be so loosely applied to paragraph 353 as to permit the inclusion of every article having an electrical element or device as an essential part, since such an application would render the naming of the exemplars useless and would be at variance with the decision in *John A. Steer & Co.* v. *United States*, 24 CCPA 293, T.D. 48737, where it was held that an anhydrous ammonia plant was not classifiable under paragraph 353, notwithstanding the fact that an electrical element was required to initiate its operation. As above noted, however, the wide variety of articles named calls for a correspondingly liberal application of the *ejusdem generis* rule. * * *

The guide for determining whether the merchandise herein is within the class of articles named in paragraph 353 is set forth, as noted in the *Skinner* case, *supra*, in *United States* v. *Dryden Rubber Co.*, 22 CCPA 51, 54, T.D. 47050 (1934), as follows:

* * * A fan, a washing machine, and a sign seem to have little resemblance, but their analogy rests in the fact that electricity is the essential feature which *causes them to function and perform their work*. The language evidently was intended to be "articles * * * such as electric motors, fans", etc., thus giving these named articles as examples of such as are intended to be covered by the paragraph.

\* \* \* \* \* \* \*

There are two inquiries, therefore, when the question of the classifiability of an article under this division of the paragraph is under consideration: First, is it essentially an electrical article? * * * Second, if it is such an electrical article, is it an article named in the language, or *within the class of articles named* in this paragraph?

\* \* \* \* \* \* \*

On the other hand, if, when the article is imported, *it is so constructed as to utilize electrical power* solely, and, therefore, is, essentially, an electrical article, and *its various parts are imported, are intended to be used, and are used, together*, as was the case with the imported merchandise, then no reason can be seen why it should not be considered, for dutiable purposes, within the scope of the third division of this paragraph, for in such case, we think the article should be held to be included within the class of articles named in the paragraph. [Emphasis supplied.]

It is clear from the above quoted passages in *Dryden*, *supra*, that the soleplates and switch assemblies at bar bear no kinship, in a

classification sense, to the locomotives, heaters, portable tools and other commodities named in paragraph 353. Albeit totally diverse in construction and function, except for their electrical features, the latter are complete, finished articles; all are fully capable of utilizing their contained electrical elements or devices and of performing their intended function. They are not *parts* of other articles.

Unlike the foregoing, the items at bar perform no function and are useless by themselves; they cannot utilize their electrical features until assembled with other parts into irons. In fact and in law, the soleplate and switch assemblies herein are but *parts* of articles which, in the absence of the conflicting provision of paragraph 339, would properly find classification under paragraph 353. The parts themselves are not *ejusdem generis* with the exemplars listed in paragraph 353.

The fact that the imported wares are occasionally sold separately as replacement items does not bring them within the scope of paragraph 353 as "articles". In this sense, they are no different from other imported commodities containing essential electrical features but held to be properly classifiable as parts of articles having as an essential feature an electrical element or device within the purview of paragraph 353, such as a motor variator, in *Buhler Bros., Inc., Gehrig Hoban & Co., Inc.* v. *United States*, 42 Cust. Ct. 239, C.D. 2093 (1959); magnetos, in *Ronco Corporation* v. *United States*, 44 Cust. Ct. 253, C.D. 2184 (1960); or multipurpose spark plugs, in *Lodge Spark Plug Co.* v. *United States*, 49 Cust. Ct. 158, C.D. 2379 (1962).

Plaintiff cites a "Change of Practice" ruling issued in April, 1961, under T.D. 55353 (1) wherein the Bureau of Customs declared that—

> Parts in chief value of metal for electrical household and kitchen utensils, such as coffee percolators, can openers, coffee grinders, pepper mills, * * *, except those parts which are classifiable under paragraph 353 as articles having as an essential feature an electrical element or device, and dutiable at the rate of 13¾ percent ad valorem, all the foregoing now being classified as parts under paragraph 353, Tariff Act of 1930, under an established and uniform practice, are classifiable as articles, not specially provided for, manufactured, in chief value of metal, under paragraph 397, * * *.

Plaintiff contends that this ruling was undoubtedly influenced by the decision in *United States* v. *Lyons Transport*, *supra*, and, noting that the ruling excepts parts classifiable as "articles" under paragraph 353, suggests that the collector herein "did not follow the Bureau's directive and continue to classify" the merchandise at bar under that paragraph.[6]

We do not construe this ruling to mean that certain items, formerly classifiable as "parts of articles", should now be classified as "articles" under paragraph 353. Rather, it excepts from the change of practice

---

[6] Brief, page 5.

ruling those commodities which had formerly been classified as "articles" under that provision. At any rate, although of some interest in ascertaining the Bureau's approach to classification of merchandise, this court will not be led or misled by a Bureau ruling; the final determination as to the tariff classification of imported merchandise in litigation has been reposed in this court by the Congress, subject to appeal to the appropriate tribunal.

For the foregoing reasons, we find the position of plaintiff to be without merit.

The protest is overruled and the classification is affirmed.

Judgment will be entered accordingly.