(C.D. 4070)

AMERICAN BRISTLE & HAIR DRAWING CO. KEER MAURER & COMPANY } *v.* UNITED STATES

United States Customs Court, Third Division

(Decided August 28, 1970)

*Schwartz & Lidstrom* (*Barnes, Richardson & Colburn, Joseph Schwartz,* and *Peter J. Fitch,* of counsel) for the plaintiffs.

*William D. Ruckelshaus,* Assistant Attorney General (*Robert Richardson* and *Frederick L. Ikenson,* trial attorneys), for the defendant.

Before RICHARDSON, LANDIS, and ROSENSTEIN, Judges

ROSENSTEIN, Judge: The subject merchandise, exported from Holland in 1965 and invoiced as "brown processed hoghair," was assessed at one cent per pound as "Bristles, crude, or processed in any way for use in brushes or other articles" under TSUS item 186.30. Plaintiffs contend that the shipment consists of hog hair and, as such, is entitled to entry free of duty under TSUS item 186.55 which, in conjunction with its superior heading, provides for "Hair, and fur removed from the skin, not specially provided for * * * Other: Crude, sorted, treated, or both sorted and treated, but not otherwise processed".

Plaintiffs do not rely upon commercial designation but assert that the common meaning and the trade understanding of the term "bristles" excluded the subject merchandise from the provisions of item 186.30.

At the trial, three witnesses appeared for plaintiffs and one for defendant; three exhibits were received in evidence. Exhibit 1 is an illustrative sample of the imported merchandise; exhibit 2 is a sample of hog bristles three and one quarter inches long; and exhibit A is a sample of two inch tapered Yugoslavian hog bristles.

The first witness, Bernard Smolin, president of the importer, American Bristle & Hair Drawing Company, testified that he has been purchasing different types of animal hair for his company since 1937 but discontinued handling bristles in 1950. He buys merchandise such as exhibit 1 as "hog hair" and sells it under that name to the curled hair industry which curls the material for use in upholstered furniture, padding, and similar articles. He has never sold "bristles" to that industry. The witness stated that exhibit 1 is softer and shorter than exhibit 2 and, unlike the latter, does not come from the neck or spine

of the hog. Hog hair varies in price in the United States from six to twelve or fifteen cents per pound, whereas hog bristle varies from nearly one to twenty dollars per pound. The bristle is used in the manufacture of brushes.

Hog hair varies in texture, depending upon the age of the hog, the time of year it was killed, and the country of origin. Hog bristle is stiff, coarse hair which is two inches or more in length.

"Flagging" is a term used to decribe the end of the bristle which splits into two or more filaments. The other end is called the "butt" end. Flagging is an important characteristic of a bristle because it holds the paint better.

Hans Jacob Meyer, president of H. Meyer & Company, importers of wool and hair, testified that he imports bristles such as exhibit 2 for sale to brush and broom manufacturers. However, this constitutes only five per cent of his business: he is "not a bristle man" and has done very little bristle selling. He sells hair such as exhibit 1, which is too soft and short for use in the brush industry, to the curled hair manufacturers as hog hair. Hog hair comes from the body of the hog, is produced all year round and ranges from one quarter to one half inch to two inches in length.

Bristles come from the spine of the hog, are produced only in winter, range from two inches up to sixteen or seventeen inches, and are never sold to the curled hair trade. The witness doubted that anyone in the United States sorts and bunches raw bristles. There is a loss of between 60 and 70 percent in the preparation of raw bristles which consist of "pieces of hide, waste—toes, *short material which is under two inch—* under two and a half inch, and is not worthwhile to be dressed." [Emphasis supplied.] Exhibit 2, he stated, is crude bristle "unassorted, unwashed, uncleaned, undressed."

Plaintiffs' third witness, Richard E. Siegel, vice president of F. P. Woll & Company, manufacturers of curled animal hairs, testified that he buys products like exhibit 1 as "hog hair" and has never purchased "bristles" as they are too expensive. His firm purchases the crude hog hair directly from slaughter houses, boils it to remove skin, dirt and bones, and dries it into a shape such as the hairs in exhibit 1.

Defendant's witness, David Zeitlin, president of Samuel Zeitlin & Sons, Incorporated, importers and processors of bristles and horsehair, testified that he deals in "dressed" bristles such as exhibit 2, and that there is no bristle dressing industry in the United States. Most of his imported dressed bristles are sold to the brush trade; the remainder is blended with other materials for use in brushes.

The dressing of raw bristles consists of sizing, sorting and cleaning; "* * * the object is to get all the longer sizes out and dress as much of

this bristle as they can get out of it before it becomes left with nothing but waste." He has bought Indian bristles as short as an inch and a half in length. The witness described exhibit A as a "two inch taper" consisting of bristles ranging from two inches "down to maybe half-inch in there, or an inch * * *." It is the "residue of all the short sizes out of a dressing process" and is used only for brushes. The witness does not deal with merchandise such as exhibit 1 which is "raw material". He defined raw bristle as—

> * * * bristle that's going to be sized, cleaned, and straightened, and so forth, for drawing the various sizes for dressing; and then selling, as a bristle, mostly to the paint trade, or whatever it is— paint brush trade.

Only hogs, to his knowledge, produce bristles. The older ones have long bristles on the spines and sides. Most bristles are used for brushes. Some cheap hair brushes have bristles under two inches. Hog bristles, he stated, have a flag and a butt end. Exhibit 1 has the same stiffness as exhibit A. When asked if exhibit 1 is hog hair or bristle, he responded, "I say that it has a root, and it has a flag, and it comes from a hog." However, he always refers to such merchandise as "hog hair", as "that is the terminology in our trade"; he refers to material such as exhibits 1 and A as "bristle". Although the fibers of exhibits 2 and A are straight, he stated that originally they were in the shape of exhibit A, "all twisted". He could get exhibit 1 in the form of exhibit A, but it would not be economically or commercially feasible.

He agreed with the *American College Dictionary* definition of bristle as "one of the short, stiff, coarse hairs of certain animals, especially hogs, used extensively in making brushes," and agreed with the term "short" "if they mean six inches to two inches, * * *."

Our examination of the samples reveals that the bristles comprising exhibits 2 and A are fairly stiff and coarse. They are imported in firmly packed bundles with the butt ends arranged at one end. They range in length in exhibit A from approximately one and one quarter to a little over two inches, with the majority between one and one half and one and three quarter inches. The bristles in exhibit 2 are over three inches long.

The fibers comprising exhibit 1, which are not sorted or bundled, but loosely packed, range from approximately one half to over two inches in length; the majority appear to be approximately one and one quarter inches long. They are slightly curled and almost all have flag ends. The longer ones appear to be as coarse and stiff as those in exhibits 2 and A, the others less so.

In the absence of commercial designation or manifest contrary legislative intent, tariff terms are to be accorded their common meaning.

*United States* v. *C. J. Tower & Sons*, 44 CCPA 1, C.A.D. 626 (1956). In challenging the district director's presumptively correct finding that the articles at bar are "bristles", plaintiffs assumed the dual burden of affirmatively establishing a common meaning for that term which excludes the merchandise at bar and of proving the correctness of the claimed classification.

The thrust of plaintiffs' argument appears to be that bristles "as commonly understood or as known in the trade" are the stiff, coarse hairs of the hog used commercially in the manufacture of brushes; and that the subject merchandise, which is not commercially used in brushmaking, is "hair" within the meaning of item 186.55. Thus, under plaintiffs' theory, item 186.30 is an *eo nomine* use provision embracing within its intendment only that hog hair used commercially in brushmaking.

In determining the common meaning of a word, the court may consider, in addition to the testimony of record, the legislative history and lexicographic and other relevant authorities. *United States* v. *O. Brager-Larsen*, 36 CCPA 1, C.A.D. 388 (1948); *Mitsugi Higashi* v. *United States*, 64 Cust. Ct. 25, C.D. 3954 (1970).

The term in issue is not new to our tariff laws. Import duties were levied on "bristles" as far back as the Tariff Act of April 27, 1816. Commencing with the Tariff Act of 1894, and down to and including the Tariff Act of 1930, Congress differentiated between "bristles, sorted, bunched, or prepared", which were assessed with duty, and "bristles, crude, not sorted, bunched, or prepared", which were allowed duty-free entry.[1] The legislative purpose was explained by the circuit court in *Pushee* v. *United States*, 14 Treas. Dec. 145, T.D. 28385 (1907), affirmed *Id.* v. *Id.*, 15 Treas. Dec. 161, T.D. 28782 (1908), as follows:

> * * * it seems clear that the distinction which Congress intended to make in these paragraphs is between crude bristles consisting of a mass of different sizes, with their butt ends and flag ends mixed together indiscriminately, and crude bristles which have been in any way sorted, bunched, or prepared; * * *

See also *United States* v. *N. Wagman & Co.*, 33 CCPA 88, C.A.D. 320 (1945); *Isaac Polack* v. *United States*, 17 Cust. Ct. 118, C.D. 1030 (1946).

In the carryover to the Revised Tariff Schedules, adopted by the Tariff Classification Act of 1962, the provisions were consolidated and the language revised to read "bristles, crude, or processed in any way for use in brushes or other articles".

---

[1] Pars. 314 and 420, Tariff Act of 1894; pars. 411 and 509, Tariff Act of 1897; pars. 424 and 523, Tariff Act of 1909; pars. 337 and 432, Tariff Act of 1913; pars. 1408 and 1537, Tariff Act of 1922; pars. 1507 and 1637, Tariff Act of 1930.

A change in language generally imports a change in meaning unless the contrary is clearly shown. *United States* v. *American Brown Boveri Electric Corporation*, 17 CCPA 329, T.D. 43776 (1929). The *Tariff Classification Study*, November 15, 1960, Schedule 1, states (page 254) :

> * * * Virtually all imports have been bunched, prepared, or sorted, and are therefore dutiable. Inasmuch as the 3 cents per pound duty is insignificant (equal to 1.1 percent ad valorem on imports in 1957), the separate free provision for crude bristles has been dropped. * * * *All bristles*, therefore, whether crude or prepared, and *from whatever source* are covered by item 186.30 at the rate of 3 cents per pound. [Emphasis supplied.]

Whether this change represents an intent to broaden the coverage of the earlier provisions or, simply, to resolve an existing ambiguity, it is patent that item 186.30, which includes bristles, "crude, or processed * * * for use in brushes *or other articles*," [emphasis added] does not have the restrictive meaning urged by plaintiffs. Therefore, the fact that the hog fibers at bar were not used in the manufacture of brushes would not be preclusive of their classification as bristles.

"Bristle" is defined in *Webster's New International Dictionary*, Second Edition, as—

> 1. a A short, stiff, coarse hair, as on the back of swine. b such a hair, or a manufactured substitute, used in a brush or similar article;

in *Funk & Wagnalls New Standard Dictionary*, 1940 edition, as—

> 1. One of the coarse, stiff hairs of swine: used in brush-making, etc.

and in the *American College Dictionary*, Random House, Incorporated, 1962, as—

> 1. One of the short, stiff, coarse hairs of certain animals, esp. hogs, used extensively in making brushes, etc.

The *Summary of Tariff Information*, 1920, states (page 524)—

> Description and uses.—*Bristles* are the strong hairs growing on the back (and to some extent on the sides) of the hog, wild boar, and certain other animals. They are extensively used in brushes and by shoemakers and saddlers. The best bristles come from the cold regions of the Temperate Zone. * * *

> Production.—The small and immature slaughterhouse bristles (a by-product of the pork-packing industry) are short and inferior. Russia supplies the finest grade, the hairs being much longer and stiffer than those of American bristle-bearing animals. China, however, with a somewhat inferior product, supplies from 60 to 75 percent of the bristles we require for paint brushes.

The *Dictionary of Tariff Information*, 1924, describes bristles (page 82) as—

> * * * the stiff hairs growing on the back (and to some extent on the sides) of the hog, wild boar, and certain other animals. They are extensively used in brushes and by shoemakers and saddlers. The best bristles come from the cold regions of the Temperate Zone.
>
> *Production.*—The small and immature bristles obtained from slaughterhouses (as a by-product of the pork-packing industry) are short and inferior. Russia supplies the finest grade, the hairs being much longer and stiffer than those of American bristle-bearing animals. China, however, with a somewhat inferior product, supplies 60 to 75 percent of the bristles required for paint brushes.

The *Summary of Tariff Information*, 1929, prepared by the Tariff Commission for the use of the House Ways and Means Committee in considering the proposed Tariff Act of 1930, contains the following description (page 1921):

> Description and uses.—Bristles are the stiff, coarse hairs of the hog. Their quality depends upon the season, climate, breed, and maturity. As they are utilized almost wholly in brush manufacture, they are graded according to their serviceability for this purpose. Color, stiffness, resiliencey, and length are the chief factors which determine their grades. The colors range from white to black. White bristles are generally higher priced than bristles of other shades because of the demand for them in toothbrushes and other toilet brushes. The butt or stiffer ends of white bristles are cut off and used in toothbrushes.
>
> A feature of bristles is the "flag" or split ends, which are well adapted to holding and spreading paint uniformly. Stiffness, resiliency, and length are desirable in bristles used for paint and varnish brushes. Bristles are classified commercially according to source, such as "Tientsin," "Hankow," etc. They are further identified in the trade by terms designating color, length, and quality.
>
> *       *       *       *       *       *       *
>
> Competitive conditions.—There are produced in the United States practically no bristles which compete with the foreign importations. There are no satisfactory substitutes for bristles. Horsehair is used in such articles as low-priced paint brushes, but horsehair has no split or flag end for holding and distributing paint evenly, and can not be used in the better grade of brushes. Tampico, or "istle" as it is otherwise known, imported from Mexico and South America, is used because of its resemblance to bristles, but it lacks resiliency and durability.

The *Materials Handbook*, Eighth Edition, 1956, by George S. Brady, contains the following passage (pages 121-*et seq.*):

> Bristles. The stiff hairs from the back of the hog, used chiefly in making brushes. The very short bristles, rejects, and scrap

pieces are used for filler in plastics. The best brush bristles do not include hair from the sides of the animals, nor the product from the fat meat animals killed in the slaughterhouses. They come mostly from types of semiwild swine grown in cool climates, notably northern China and Russia. Bristles are in form similar to a tiny tube outwardly covered with microscopic scales and filled with a fatty substance. The so-called flag, or split end, gives the valuable paint-carrying characteristic for brushes. The taper of the bristle gives the brush stiffness at the base and resiliency toward the end. Quality varies according to the type of animal, climate, and feeding. The colors are white, yellow, gray, and black. They are graded by locality, color, and length, and in normal times the name of the place at which they are graded, such as Tsingtao, Hankow, and Chungking, is an indication of the grade. The best fibers are more than 3 in. in length. * * *

Although the quoted definitions and descriptions state that bristles are extensively used in the manufacture of brushes, none of them makes identification of the material contingent on actual use, or suitability for use, in that respect, as plaintiffs claim. See *United States* v. *Page N. Goffigon*, 43 CCPA 172, C.A.D. 625 (1956).

It is apparent that bristles, which vary in quality, texture and length,[2] consists of hairs of the hog which, to varying degrees, are stiff and coarse, and have flag, or split, ends. All of these attributes are ascribable to the merchandise at bar. Moreover, flag ends are so peculiarly characteristic of bristles that "flag" is defined in *Funk and Wagnalls New Standard Dictionary*, 1942, as—

* * * 4. The split end of a bristle.

and in *Webster's New International Dictionary*, Second Edition, as—

* * * 3. The pliant end of a bristle used for brushes.

We note the testimony of record that material such as exhibit 1 is not sold as "bristles", and that it is too short for dressing for use in brushes.[3] However, the experience of the witnesses herein is limited to bristles commercially suitable for use in brushes, and which have been sorted and bundled in the manner of exhibits 2 and A.[4] None deal in the "raw" bristle which is not bundled, sorted, or processed in any way. In this connection, we refer to the following statements elicited by plaintiffs' counsel on cross-examination of the government witness Zeitlin:

Q. And, also, you say you have seen samples of Exhibit 1.—A. Yes, sir.

---

[2] The range in the lengths of the fibers in exhibit 1 overlaps considerably those of exhibit A, which, concededly, are bristles.

[3] Exhibit A, however, contains bristles as short as one half inch.

[4] "Virtually all imports have been bunched, prepared, or sorted, and are therefore dutiable." *Tariff Classification Study, supra.*

Q. Are not the strands, or fibers, or whatever you want to call them of Exhibits 2 and A, relatively straight? *Haven't they been straightened out?*—A. That's right.

Q. And bundled that way?—A. *They were originally this shape* witness indicating).

JUDGE MALETZ: Originally.what shape?

THE WITNESS: The same as in this bag [exhibit 1]—*all. twisted.* [Emphasis supplied.]

Zeitlin also testified that, although it would not be commercially feasible, he could get the material in exhibit 1 into the form of the fibers comprising exhibit A; and plaintiffs' witness Meyer stated that, in sorting bristles, there is a loss of "* * * short material which is *under two inch*—under two and a half inch, and *is not worthwhile to be dressed.*" [Emphasis added.]

On the record herein, which is vague and inconclusive, plaintiffs have failed to show a valid and viable distinction between bristles of all shapes, grades and qualities, and the importation at bar.

Plaintiffs rely upon *F. Irsch* v. *United States*, T.D. 12852—G.A. 1448 (Syn. of Dec., 1892), which held that certain merchandise used in the manufacture of curled hair for mattresses was hog's hair and not bristles. In view of the substantial change in the language of the bristles provision in TSUS, and the failure to show that the merchandise therein, which was not described in the opinion, is of the same or even like character as that at bar, the doctrine of legislative ratification of judicial decision asserted by plaintiffs is not applicable. *United States* v. *Antony Gibbs & Co., Inc.*, 18 CCPA 101, T.D. 44066 (1930).

For the foregoing reasons, we find that plaintiffs have failed to overcome the presumptively correct classification herein and overrule the protest. Judgment will be entered accordingly.