(458 F. 2d 524)

AMERICAN BRISTLE & HAIR DRAWING Co., KEER MEURER & Co. *v.* THE UNITED STATES (No. 5444, C.A.D. 1048)

---

[2] Prepared by the National Shoe Manufacturers Association, Inc., in April 1963. It is stated in the foreword that the pamphlet is a "dictionary of simple footwear construction definitions" for "non-technical people."

United States Court of Customs and Patent Appeals, April 27, 1972

Barnes, Richardson & Colburn; Sharretts, Paley, Carter & Blauvelt, attorneys of record, for appellants. *Charles P. Deem, Joseph Schwartz* of counsel.

*L. Patrick Gray, III,* Assistant Attorney General, *Andrew P. Vance,* Chief, Customs Section, *James Caffentzis* for the United States.

[Oral argument January 3, 1972 by Mr. Deem and Mr. Caffentzis]

Before WORLEY, *Chief Judge,* RICH, ALMOND, BALDWIN, and LANE, *Associate Judges*

LANE, *Judge.*

■ This is an appeal from the judgment of the Customs Court, 65 Cust. Ct. 147, C.D. 4070 (1970), upholding the district director's classification of the imported merchandise, involved as "brown processed hoghair," as bristles under item 186.30 of the Tariff Schedules of the United States (TSUS) with duty at the rate of 1¢ per lb. and rejecting appellants' claim of free entry as hog hair under item 186.55 TSUS. We reverse.

The statutory provisions here at issue read as follows:

| | | |
|---|---|---|
| 186.30 | Bristles, crude, or processed in any way for use in brushes or other articles_____ | 1¢ per lb. |
| | Hair, and fur removed from the skin, not specially provided for, crude, sorted, treated, dyed, or otherwise processed but not made up into articles: | |
| * * * | Human hair_____ | * * * |
| | Other: | |
| 186.55 | Crude, sorted, treated or both sorted and treated but not otherwise processed_____ | Free |

Appellants offered in evidence two exhibits and the testimony of three witnesses. Exhibit 1, illustrative of the imported merchandise, was offered as hog hair. Exhibit 2 was introduced as a sample of hog bristle. Appellee called one witness and introduced in evidence one exhibit (Exhibit A) as a bundle of two-inch tapered Yugoslavian hog bristles. With respect to Exhibit 1, the Customs Court said:

The fibers * * *, which are not sorted or bundled, but loosely packed, range from approximately one half to over two inches in length; the majority appear to be approximately one and one quarter inches long. They are slightly curled

and almost all have flag ends. [1] The longer ones appear to be as coarse and stiff as those in exhibits 2 and A. The others less so.

The court characterized the bristles of Exhibits 2 and A as follows:

\* \* \* [They] are fairly stiff and coarse. They are imported in firmly packed bundles with the butt ends [2] arranged at one end. They range in length in exhibit A from approximately one and one quarter to a little over two inches, with the majority between one and one half and one and three quarter inches. The bristles in exhibit 2 are over three inches long.

These observations are apparently not challenged by either party.

Appellants' witnesses included Smolin, the president of the importer company, and Meyer, part owner of a company producing the imported goods in Holland as well as president of a domestic company which imports wool and hair. Both witnesses had long experience in importing hog hair, but more limited experience with bristles. Siegel, vice-president of a company which manufactured curled hair who had a good deal of experience in that field, was appellants' third witness. The testimony of these witnesses establishes that imported fibers such as those here involved and represented in Exhibit 1 were sold to Siegel's company and to others under the name of hog hair. The purchasers processed the hair by giving it a permanent curl to impart resiliency thereby rendering it suitable for use as upholstery padding for furniture and as packing material. The witnesses testified that the importations, which they regard as hog hair, cost considerably less than hog bristles and are not used to make brushes, the predominant use of bristles.

Zeitlin, the government's sole witness, president of a company engaged in importing bristles and horsehair and with long experience in that field, declined to identify the Exhibit 1 fibers as bristles "of any kind." Instead, he stated that "[w]e always refer to merchandise like this as hog hair" in "the terminology in our trade."

The Customs Court focused on the tariff history of bristles and observed that prior to the 1962 Tariff Classification Act, bristles were divided into two categories. One, for "bristles, sorted, bunched, or prepared," carried a duty, while the other, for "bristles, crude, not sorted, bunched, or prepared," was given duty-free treatment. Under the present tariff schedules, a duty is applied to all bristles, crude or processed. The court below felt this change to be significant. In addition, the court regarded definitions of bristle gleaned from dictionaries and other sources to be broad enough to comprehend the imported merchandise. In overruling appellants' protest, the Customs Court said:

---

1 The flag end is split into two or more filaments.
2 The butt end is that which is opposite the flag end of the fiber or bristle.

[I]t is patent that item 186.30 * * * includes bristles, "crude, or processed * * * for use in brushes *or other articles*" * * *. [Emphasis the Customs Court's.] Therefore, the fact that the hog fibers at bar were not used in the manufacture of brushes would not be preclusive of their classification as bristles.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Although the quoted definitions and descriptions state that bristles are extensively used in the manufacture of brushes, none of them makes identification of the material contingent on actual use, or suitability for use, in that respect, as plaintiffs claim. * * *

It is apparent that the bristles, which vary in quality, texture and length, [footnote omitted] consists of hairs of the hog which, to varying degrees, are stiff and coarse, and have flag, or split, ends. All of these attributes are ascribable to the merchandise at bar. * * *

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

On the record herein, which is vague and inconclusive, plantiffs have failed to show a valid and viable distinction between bristles of all shapes, grades and qualities, and the importation at bar.

 Appellants' position is essentially that the tariff laws have historically distinguished between bristles and hog hair and that the evidence adduced in this case establishes that the importations at bar consist of hog hair, not bristles. Appellants additionally urge that the decision of the Board of General Appraisers in *F. Irsch* v. *United States*, T. D. 12852, G. A. 1448 (1892), sustaining a protest against the classification of allegedly similar goods used for manufacture into curled hair for beds, matresses, etc., and known in commerce as hog's hair or pig's hair, is controlling in this case. The Customs Court was not satisfied that the goods here involved and in *Irsch* were the same, but in any event regarded the differences between the bristle provision of the TSUS and that in force when *Irsch* was decided to be distinguishing.

## Opinion

We do not agree with the conclusions of the Customs Court in this case. The court's analysis fails to reflect adequate appreciation of the historical distinction between hair and bristle which appellants have correctly noted. While it is true that Congress, commencing no later than the Tariff Act of 1894 and down to and including the Tariff Act of 1930, provided for bristles in two categories which were consolidated in the Tariff Classification Act of 1962, the tariff statutes at the same time included a provision distinct from the bristle provisions which allowed hog hair to be imported duty free. The *Irsch* decision, properly relied upon by appellants, demonstrates the application of these separate tariff provisions. The 1948 *Summaries of Tariff Information*, Volume 16, pp. 92–93, in discussing the animal hair provision of paragraph 1688 of the 1930 Act, stated:

This summary covers all unmanufactured animal hair not previously discussed in other summaries. It includes chiefly hog hair, which is used in upholstery, insulation, fertilizer, and also as a plastic retarder * * *.

▮ The abolition of a dual treatment of bristles in the TSUS did not disturb the separate duty-free classification for animal hair which is embodied in item 186.55 under which appellants claim classification of the importations at issue. The 1968 *Summaries of Trade and Tariff Information*, Schedule 1, Volume 13, pp. 113 et seq., discussed these separate provisions, and it is to be noted that the hog was understood to be the source of both bristle and hair. The *Summaries* stated:

Item 186.30 provides for "bristles, crude or processed in any way for use in brushes or other articles." Natural bristles are the coarse stiff hair found on the nape of the neck of hogs. They are collected from live animals or salvaged from slaughter houses. Crude or raw bristle is packaged in bundles containing about the same length hair but not further dressed. Dressed bristle has been sterilized by chemicals, and by boiling or steaming, and is often dyed. Dressed bristle is packed in small bundles containing bristles of similar appearance and length. The chief use of bristles is in paint brushes and expensive toothbrushes and hairbrushes.

Item 186.55 provides for animal hair, and fur removed from the skin, that is crude, sorted or treated, or both sorted and treated, but not dyed or otherwise processed and not made up into articles. The main types of such animal hair are soft hair (described below), horse mane, tail, and body hair, cattle body hair, goat body hair, and hog body hair.

\* \* \* \* \* \* \*

* * *, Hog body hair, another by-product of the slaughterhouse, is also used in the manufacture of curled hair. * * *

\* \* \* \* \* \* \*

There are no statistics on the domestic consumption of these animal hairs; the aggregate consumption is estimated to be between 60 million and 75 million pounds annually. The bulk of consumption in terms of quantity and value, consists of cattle and hog body hair. Next in importance are bristles and horsehair. * * *

In sum, we feel that the Customs Court gave too much weight to the change in tariff treatment of bristles. There is nothing in the tariff history before us that demonstrates any intention to change the tariff treatment of *hog hair* from that which prevailed for many years or to alter the distinction between hog hair and bristles, whether crude or advanced.

The Customs Court concluded that appellants had failed to show a viable distinction between bristles of any description and the importations at bar and would seem to have been influenced by the failure of the record to reveal a specific definition of "bristles" that would be determinative of the present controversy. We agree that it is difficult to extract such a definition from the evidence and testimony of record. When counsel advanced published definitions, they were either rejected

or qualified by the witnesses. The witnesses did agree that Exhibits 2 and A unlike Exhibit 1, were bristles. Otherwise, the most that can be gleaned from this aspect of the testimony is that hogs are a source of bristles as well as hog hair, that lengths of two inches or longer are generally characteristic of bristles, that bristles tend to be more coarse and stiff than hog hair, that bristles cost considerably more than hog hair, and that bristles are predominantly used in brushes whereas hog hair is not so used.

However convenient a precise definition might be, its absence is not conclusive of whether appellants have shown that the importations comprised hog hair rather than bristle. ■ We find the evidence persuasive that the importations were known by those in both the hog hair and bristle trades as hog hair and not as bristle and were used as hog hair and not as bristle. The merchandise should have been classified under item 186.55 TSUS and given duty-free treatment as claimed by appellants, and the decision of the Customs Court overruling the protest is in error. We accordingly *reverse* the decision and judgment of the Customs Court.

WORLEY, *C. J.*, took no part in the decision of this case.