H. E. LAUFFER CO., INC., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 74-4-00885-S

(Decided July 22, 1981)

*Murray Sklaroff* for the plaintiff.

*Stuart E. Schiffer*, Acting Assistant Attorney General; *Jospeh I. Liebman*, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch (*Susan Handler-Menahem* on the brief) for the defendant.

RAO, *Judge:* This case involves merchandise imported at New York in 1972 and 1973, consisting of articles described on the commercial invoices as "Anenome," "Karelia," "Rosemarin," "Saara," "Kosmos Brown," "Ruska," "Valencia" and "Oliivi."

The merchandise was classified as articles chiefly used for preparing, serving, or storing food or beverages, or food or beverage ingredients, of nonbone chinaware or of subporcelain, available in specified sets having an aggregate value of over $10 but not over $24 in item 533.65, TSUS as amended; or available in specified sets having an aggregate value of over $24 but not over $56 in item 533.66, TSUS, as amended.

The parties have stipulated that if this court has jurisdiction over this action, the merchandise is properly classifiable as articles chiefly used for preparing, serving, or storing food or beverages, or food or beverage ingredients, of fine-grained earthenware or fine-grained stoneware available in specified sets having an aggregate value of over $7 but not over $12 in item 533.26, TSUS, as amended, or available in specified sets having an aggregate value of over $12 in item 533.28, TSUS, as amended.

The jurisdictional question arises as a consequence of plaintiff's having filed two protests against the merchandise in three entries (entries 450637, 356439 and 304891). Entry 472635, also involved herein, is not the subject of a dual protest.

Pursuant to 19 U.S.C. § 1514(b)(1) [as in effect at the time of these entries] "only one protest may be filed for each entry of merchandise, except that where the entry covers merchandise of different categories, a separate protest may be filed for each category." The United States Court of International Trade [the U.S. Customs Court at the time this action was commenced] does not have jurisdiction of any action unless a protest has been filed as prescribed by section 514 of the Tariff Act of 1930, as amended [19 U.S.C. § 1514 (1976)]. 28 U.S.C. § 1582(c) (1976).

The sole issue before this court, therefore, is whether merchandise classifiable as articles used for food preparation, serving or storage of fine-grained earthenware or stoneware available in specified sets having an aggregate value between $7 and $12 and merchandise of the same composition and use but having an aggregate value of more than $12 per specified set is "of different categories."

The merchandise is "of different categories" and this court, accordingly, has jurisdiction in this case.

The word "category" is defined in *Webster's New Collegiate Dictionary*, C. & C. Merriam Co., 1973, as follows:

1 c: one of the fundamental or ultimate classes of entities or of language

2: a division within a system of classification.

It is also defined in *Webster's New International Dictionary of the English Language*, 2nd ed. (1956), as:

2. A class to which a certain assertion applies; a class or division formed by the nature of the considerations entertained or for the purposes of a given discussion or classification; * * * (see classification).

The Tariff Schedules themselves speak of "all articles imported into the customs territory of the United States" [general headnote 1, TSUS], the broadest category of merchandise for purposes of imposing tariffs, and very specific categories of merchandise; e.g. vegetables, reduced to flour, garlic, in item 140.60, TSUS. Therefore the merchandise in this action is of different categories, because it has different values, that is, the merchandise with a value between $7 and $12 is different from the merchandise of the same type but with a value of over $12.

The *Tariff Classification Study Explanatory and Background Materials*, Schedule 5 at page 86, discusses items 533.23, −.25 and −.27 (item 533.27 is encompassed in 533.26 and 533.28, effective January 1, 1968), and states:

The existing "value-bracket" tariff descriptions for plates, cups, saucers and other articles adopted as a result of the trade-agreement concessions were aimed at separating tableware into three quality grades each of which would bear the same rate for all articles in the grade.* * *

This evidences a Congressional intent that tableware of different grades would be considered separately, that is, to be of different categories, based on differences in quality.

In the United States Tariff Commission's (now the United States International Trade Commission) *Summaries of Trade and Tariff Information*, Schedule 5, Volume 3 (1971), at page 102, it is stated that for tariff purposes, ware "available in specified sets (items 533.23, −.25, −.26, −.28) is considered dinnerware." In discussing United States imports of dinnerware, the Tariff Commission stated at page 107:

Dinnerware having a unit value of over $7 per 77-piece norm, which accounted for about 95 percent of the quantity of dinner-

ware imported during 1966–70, increased irregularly from 5.5 million dozen pieces, valued at $12.8 million in 1966 to 6.8 million dozen pieces, valued at $20.4 million in 1970. The United Kingdom and Japan together supplied most of the imported dinnerware valued over $7 per norm, while Japan alone supplied most of the ware valued at less that (sic) $7 per norm. [Footnote and table ommitted.]

While the *Summaries of Trade and Tariff Information* are not legislative history for the tariff schedules, having been promulgated subsequent to the enactment of the tariff schedules, the *Summaries* are indicia of Congressional intent. *American Bristle & Hair Drawing Co. et al.* v. *United States*, 59 CCPA 104, C.A.D. 1048, 458 F. 2d 524 (1972). The quoted statement evidences an intent to separate dinnerware having a unit value of over $7 per 77-piece norm from that valued under $7 per norm by the Tariff Commission, and the norms were in different categories for the purpose of compilation of statistical and trade data.

It is not difficult to determine that dinnerware worth between $7 and $12 per set would be marketed and sold differently than dinnerware worth more than $12 per set, with different expectations on the part of the purchasers with respect to quality, performance, durability and desirability. Indeed, the marketing and sale of the different categories would be directed to different classes of purchasers.

This court does not decide that the involved merchandise is "of different categories" because it is encompassed in different items of the TSUS, as argued by plaintiff in its brief. None of the authorities relied on by the plaintiff supports such a conclusion. *International Seaway Trading Corp.* v. *United States*, 81 Cust. Ct. 92, C.D. 4773, 464 F. Supp. 380 (1978) involved rubber footwear with soles of material other than leather, with uppers of vegetable fibers. In considering whether the presumption of correctness attached to alternative categories of rubber and plastics within the same item number, the court concluded that the presumption attached to neither, and discussed the possibility that merchandise may fall within the same paragraph or item number. In the instant case, the issue is not whether the merchandise is encompassed in different categories within one item number, but whether it is encompassed in different items. The cited case is inapposite.

*Webcor Electronics* v. *United States*, 79 Cust. Ct. 137, C.D. 4725 (1977), relied on by defendant, involved dual protests of Customs' classification of merchandise described in the invoices as 8-track stereo tape players under item no. 685.30, TSUS and the assessment of a 10 percent surcharge under item 948.00, TSUS, on the identical merchandise. Identical merchandise is not involved in the instant case.

In *Russ Togs, Inc.* v. *United States*, 79 Cust. Ct. 119, C.D. 4722 (1977), the dual protests involved the issues of appraisement and classification of merchandise (jackets) not contended by the plaintiff to be of different categories.

It is the judgment of this court that the merchandise in issue, dinnerware of fine-grained earthenware or of fine-grained stoneware available in specified sets having an aggregate value of over $7 but not over $12 is "of different categories" than dinnerware of the same composition but having an aggregate value of more than $12 per specified set, that the prohibition against dual protests contained in 19 U.S.C. § 1514 is inapplicable in this case, and that jurisdiction is properly vested in this court.

Accordingly, judgment is granted in favor of plaintiff based on the facts previously stipulated to by the parties.