**No. 61976.**—Nife, Inc. *v.* United States, protest 282861–K (New York).

FORD, Judge:   The suit listed above challenges the action of the collector of customs in classifying certain imported merchandise as "Flashlights" and levying duty thereon at the rate of 35 per centum ad valorem under paragraph 353 of the Tariff Act of 1930.   Plaintiff claims said merchandise to be properly dutiable at the rate of 13¾ per centum ad valorem under said paragraph 353, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T. D. 52739, as articles having as an essential feature an electrical element or device; at the rate of 15 per centum ad valorem under said paragraph 353, as modified by T. D. 51802, as articles suitable for controlling, distributing, modifying, producing, or rectifying electrical energy, or at 22½ per centum ad valorem under paragraph 397 of said act as modified, *supra,* as articles in chief value of metal, not plated with platinum, gold, or silver, or colored with gold lacquer, and not specially provided for.

This case was originally decided on February 11, 1958, Abstract 61550, and is before us at this time for reason of a motion for rehearing having been granted in order to make certain corrections in the record.   In his supplemental memorandum, filed on August 22, 1957, counsel for the plaintiff abandoned his claim under paragraph 397 of the Tariff Act of 1930, as modified, *supra.*   The record now before us contains the claim that the merchandise is properly dutiable at the rate of 22½ per centum ad valorem under paragraph 397 of the Tariff Act of 1930, as modified by T. D. 51802, and this is the only claim upon which plaintiff now relies.

In our original decision, we said:

At the trial of this case, a sample of the subject merchandise was admitted in evidence as exhibit 1.   This was later withdrawn, and a photograph of the same was admitted in evidence as exhibit 1.   Illustrative exhibit 2 was admitted in evidence as representing the subject merchandise equipped with batteries. Illustrative exhibit 3 was admitted in evidence as representing the ordinary flashlight.   Exhibit 4 is a page from a catalog, issued by the plaintiff herein. Collective exhibit 5 was admitted in evidence as representing pictorially only that which one witness stated he had purchased as defense lights.   In addition, two witnesses testified for the plaintiff.

One witness described the subject merchandise as follows:

Basically the device is a metal, heavy metal container which contains electrical wiring. To the top of the container is affixed a three-position switch, a lamphead which contains a lense, a guard, and a two-filament lamp. It also contains a set screw which allows the positioning of the head upward or downward. It also contains a set screw for focusing the lamp for a fine, long, high-intensity beam or for a more flood beam. Of course, it has a handle for carrying.

＊　　　＊　　　＊　　　＊　　　＊　　　＊　　　＊

It has also fixtures on either corner here for attaching a shoulder strap should the user desire to throw such a strap over his shoulder. Also has a device for closing and locking it in the closed position. I mentioned the two-filament lamp and the three-position switch. The three-position switch is when in this position off, and in one position here it lights one filament, and in the other position over here it lights the other filament.

＊　　　＊　　　＊　　　＊　　　＊　　　＊　　　＊

It lights—it makes electrical contact with the battery, which is not in here, and causes current to flow through the lamp. In one instance it flows through a low intensity filament, and in the other position—one of the other positions it illuminates the high intensity filament. It is a two-filament lamp and has a wide variance in current carrying requirements. This unit will operate for four hours continuously with the high intensity filament in operation and for twelve hours with the low intensity filament in operation.

The witness also testified that these hand lights are used by the fire and police departments, as follows:

The fire departments use it for inspecting buildings, both during and after fires, and sometimes inspecting parts of buildings or wiring before fires. This light or similar lights are carried by every chief in the New York City Fire Department. There is one light of this nature or similar light in every police car in the City of New York. They are there for if they are chasing a criminal and they want to put a light on him they have it. This beam will— you can shine it up on the side of the building to see anything alongside of the building.

The witness further testified that the involved merchandise does not produce flashes and cannot be used for signaling; that it cannot be used to take photographs, known as "flashlights"; and that it does not contain magnesium powder combined with gun cotton.

With reference to illustrative exhibit 3, which is the ordinary flashlight, the witness testified as follows:

Well, a flashlight is essentially a lightweight device that can be used in one hand, turned on and off by means of the thumb. It's usually equipped with a push-button spring switch which enables you to make flashes of light, and as referred to previously if so desired to do signaling with the Morse code.

Plaintiff's second witness testified as to his understanding of the ordinary flashlight as follows:

Well, I'd say a flashlight is a hand unit that can be controlled with the thumb of the hand that's holding it. It would consist of a case with a battery, a lamp, and a push-button spring-type switch. The pressure of the thumb upon the button would activate the dry storage batteries in the flashlight to carry the current through a flat strip which necessarily must be flat because of the small unit and the tight fit of the batteries against the case, that current to be carried through the strip to the filament of the lamp which it would light when you had pressure upon the push-button. The minute you release the pressure the light would go out, and thereby you have an intermittent light which automatically extinguishes the minute your finger is off. Putting your finger on the button would actually give you a flash of light, which is the reason that it got the name, a flashlight. It was an instantaneous light.

Plaintiff's witnesses testified that the involved hand light is not a flashlight; that a flashlight is essentially a very light article, which may be conveniently carried in the pocket or about the person, costing from 39 cents to about $4 each; that the

imported merchandise with the battery weighs about 9 pounds and costs about $120; that a flashlight is intended to be operated with one hand, is generally equipped with a push-button spring, which enables one to make flashes of light used in signaling by the military and by ships; that the imported merchandise cannot be so used; that the battery in a flashlight costs but a few cents, is a single dry cell, not rechargeable, deteriorates rapidly, and is of short duration; that the subject merchandise uses a wet storage battery, costing about $60, is rechargeable, gives a steady light for hours, and has a life of some 25 years or more.

\*      \*      \*      \*      \*      \*      \*

The uncontradicted testimony of plaintiff's witnesses establishes that the subject merchandise is not a flashlight within the common understanding of that term. The evidence also establishes that the subject hand lights are used by members of the Fire and Police Departments in the performance of their various duties for illuminating purposes. The congressional history of paragraphs 353 and 397 of the Tariff act of 1930, as set out and discussed by the Court of Customs and Patent Appeals in *United States* v. *N. Minami & Co., Inc.*, 29 C. C. P. A. (Customs) 169, C. A. D. 188, and *National Carloading Corp.* v. *United States*, 44 C. C. P. A. (Customs) 77, C. A. D. 640, makes it clear that Congress did not intend to make illuminating or lighting fixtures, lamps, lamp bases, candelabra, or candlesticks dutiable under paragraph 353, but that it did intend that such articles should be classified under paragraph 397 of said act. The following is quoted from the *National Carloading Corp.* case, *supra*:

> H. R. 2667, which eventuated in the Tariff Act of 1930, as reported from the Committee on Ways and Means and as it passed the House, carried a paragraph numbered 387 which read:

>> PAR. 387. Illuminating or lighting fixtures, lamps, lamp bases, candelabra, and candlesticks, any of the foregoing and parts thereof, finished or unfinished, not specially provided for, if wholly or in chief value of base metal or alloy, 50 per centum ad valorem; if wholly or in chief value of, or plated with, platinum, gold, or silver, 65 per centum ad valorem.

> No special reference was made to it in the report of the Committee on Ways and Means, but in the report of the Senate Committee on Finance (Senate Report No. 37, 71st Congress, 1st Session, page 19) the following appeared:

>> Paragraph 387.—Lighting Fixtures

>> Provision for lighting fixtures has been eliminated with the intent of making them dutiable under the basket paragraph 398.

> In the subsequent renumbering of paragraphs in the Act, paragraph 398, referred to above, became No. 397, under which the merchandise here in issue has been classified.

> In addition to the facts above, the Senate Committee's report made a further explicit declaration of intention relating to paragraph 353, *supra*:

>> It is not intended that this paragraph should include lighting fixtures, provided for in paragraph 387 of the House bill, and eliminated therefrom by the Senate committee.

> Also, in the statement of the managers on the part of the House, filed in connection with the conference report (H. R. Report 1892, 71st Congress, 2nd Session) at page 64, it was said the effect of striking out paragraph 387 (to which the House agreed) was "to throw the items into the basket clause of the metal schedule."

In the recent case of *McGlynn Hays Industries, Inc.* v. *United States*, 39 Cust. Ct. 266, C. D. 1940, this court held certain thread illuminators to be properly classifiable under paragraph 397 of the Tariff Act of 1930.

Based upon the established facts and the record as now constituted, we hold the merchandise, which was assessed with duty at 35 per centum ad valorem under paragraph 353 of the Tariff Act of 1930, to be properly dutiable at the rate of 22½ per centum ad valorem under paragraph 397 of the Tariff Act of 1930, as modified by T. D. 51802, as alleged by the plaintiff.

To the extent indicated, the specified claim in this suit is sustained; in all other respects and as to all other merchandise, all the claims are overruled. Judgment will be rendered accordingly.