PRESTIGELINE (DIV. OF
WEIMAN CO., INC.)

v.

UNITED STATES.

C.D. 4618;  Court No. 74–2–00364.

United States Customs Court.

Dec. 12, 1975.

Shaw & Stedina, New York City (Charles P. Deem, New York City, of counsel), for plaintiff.

Rex E. Lee, Asst. Atty. Gen. (Saul Davis, New York City, trial attorney), for defendant.

OPINION AND ORDER ON CROSS–MOTIONS–FOR SUMMARY JUDG-MENT AND DEFENDANT'S CROSS–MOTION TO DISMISS

NEWMAN, Judge:

This action is before the court on cross-motions for summary judgment, and defendant's cross-motion to dismiss the action on jurisdictional grounds.

The threshold jurisdictional issue raised by defendant challenges plaintiff's standing to sue; while the merits concern the proper classification of a certain lighting device invoiced as "Multi-Lites" or as "Closet Lights", imported from Hong Kong through the port of New York in 1973.

I have concluded that plaintiff's motion for summary judgment should be granted.

## JURISDICTIONAL ISSUE

The facts pertinent to defendant's motion to dismiss are:

The official entry papers disclose that the importer and consignee of the involved merchandise is "Prestigeline (Div. of Weiman Co., Inc.)". In 1973, six protests were filed covering the entries which are the subject of this civil action. As the protesting party, four of the protests named "Prestigeline, Inc.",[1] whereas the other two protests named "Prestigeline, Div. of Weiman Co., Inc.".[2] All six protests, however, identify the "pro-

testing party" with the same importer identifying number, 36–2306554–00.

Defendant has submitted copies of documents filed in the offices of the Secretaries of State of New York and Delaware, which disclose that "Weiman Co., Inc." is a Delaware corporation while "Prestigeline, Inc." is a New York corporation.

Defendant contends that the name "Prestigeline, Inc." appearing on the four protests refers to an existing New York corporation; that inasmuch as such corporation was neither the importer nor consignee of the merchandise, it was not authorized by 19 U.S.C. § 1514 (1970) to file the protests; and that since the four protests were not filed "as prescribed" by section 1514, the court lacks jurisdiction of this civil action respecting those four protests, pursuant to 28 U.S.C. § 1582(c) (1970).

Additionally, defendant urges that the court lacks jurisdiction respecting the two protests filed in the name of "Prestigeline, Div. of Weiman Co., Inc." because the summons was filed in the name of "Prestigeline, Inc.". Thus, regarding those two protests, defendant argues that the summons was not filed by a party whose protest was denied, as required by section 1582.

In opposition to defendant's motion to dismiss, plaintiff's counsel has filed an affidavit stating:

I, Charles P. Deem, being duly sworn, do depose and say:

1. That during February, 1973, I was associated with the firm of Donohue and Shaw, and negotiated with Mr. Murray L. Roth, president of Prestigeline, Div. of Weiman Co., Inc., an agreement dated 27 February, 1973 whereby Prestigeline retained Donohue and Shaw for the purpose of representing that company in Customs matters, including classification of imported lamps. A copy of that agreement is attached hereto as Exhibit 1.

---

1. Protest Nos. 1001–3–006785, 1001–3–012183, 1001–3–010947 and 1001–3–013812.

2. Protest Nos. 1001–3–010041 and 1001–3–008780.

2. That pursuant to the aforesaid agreement with Prestigeline, Div. of Weiman Co., Inc., your deponent caused to have prepared the six protests included in the instant civil action, and the use of the name Prestigeline, Inc. in protests 1001–3–006785, 1001–3–12113 [*sic*], 1001–3–100947 [*sic*] and 1001–3–013812 was not intended by your deponent to reflect that those protests were being filed by Donohue and Shaw on behalf of a corporation known or doing business as Prestigeline, Inc., Donohue and Shaw not representing any such corporation. Rather, the name Prestigeline, Inc. was inadvertently typed on the said protests as a shortened form of Prestigeline, Div. of Weiman Co., Inc., which acts constituted mere clerical errors by deponent's secretary.

3. That on each protest, Customs Form 19, covered by the instant civil action, the protestant's identifying importer number, 36–2306554–00, was shown in the appropriate block; that on information and belief the said importer's number was duly filed with the Regional Commissioner at New York on or about September 15, 1971; and that on information and belief the said number is assigned to and may be used solely by Prestigeline, Div. of Weiman Co., Inc. See Exhibit 2, attached hereto.

4. That on information and belief with respect to the entries covered by protests 1001–3–06785 [*sic*], 1001–3–12113 [*sic*], 1001–3–100947 [*sic*], and 1001–3–013812, the Bulletin Notice of Liquidation, Customs Form 4333 [*sic*] reflected the name of the importer of record as PRESTIGE LINE INC; and that with respect to the said entries, the Notices of Entries Liquidated, Customs Form 4333–A, similarly reflected the importer as PRESTIGE LINE INC. Copies of the pertinent CF4333 —As are attached hereto as Exhibit 3.

5. That your deponent also caused to have prepared the summons in this matter showing, purely for purposes of order, the oldest protest as the lead protest, and that notwithstanding the fact that the protest had been filed in the name of Prestigeline Line, Inc. (but on behalf of Prestigeline, Div. of Weiman Co., Inc. as hereinabove explained), the summons was intended by your deponent to be filed on behalf of Prestigeline, Div. of Weiman Co., Inc.

In essence, then, plaintiff's position is that the name "Prestigeline, Inc." is merely a misnomer for Prestigeline (Div. of Weiman Co., Inc.), the importer of record, and therefore the protests and summons were in fact filed by a statutorily authorized party.

Under 19 U.S.C. § 1514(b) (1970), the party filing a protest must be "the importer, consignee, or any authorized agent of the person paying any charge or exaction * * *". Also, pursuant to 28 U.S.C. § 1582(c) (1970), the court lacks jurisdiction over a civil action where the protest was not filed "as prescribed by" section 1514.

■ Predicated upon the importer's identifying number on the protests and the affidavit of plaintiff's counsel, and upon all the facts and circumstances herein, I am persuaded that the name "Prestigeline, Inc." appearing in four of the protests and in the summons is merely a misnomer for "Prestigeline (Div. of Weiman Co., Inc.)", the importer and consignee. Hence, I find that the four protests were filed by a statutorily authorized party.

■ It is well settled that if a protest is filed by a statutorily authorized party, but under an inaccurate signature or a misnomer, the court is not thereby deprived of jurisdiction. *Diamond Match Company v. United States,* 49 CCPA 52, C.A.D. 796 (1962); *Hancock Gross Mfg., Inc. v. United States,* 75 Cust.Ct. ——, C.R.D. 75–6 (1975); *Triumph Glove Co. v. United States,* 24 Cust.Ct. 221, C.D. 1237 (1950); *M de Orlando & Co. v. United States,* 38 Treas.Dec. 180, T.D. 38303 (1920).

Further, 19 *Am.Jur.2d Corporations* § 1475 (1965) states (pages 861–862):

§ 1475. Name of corporation; misnomer.

Corporations are mere legal creations and must sue and be sued in the corporate name. * * *

In pleadings the corporate name must be strictly used. However, as a general rule, in suits by or against corporations, if there is a misnomer, the defect should be taken advantage of by a plea in abatement or a plea or answer in the nature of a plea in abatement. A corporation which goes to trial on the merits without objecting that it is misnamed or disclosing its true name is estopped from complaining if judgment goes against it in a wrong name. Moreover, in a proper case the courts will allow an amendment of the pleadings to change or correct the name of a corporate party. [Footnote references omitted.]

And at section 1477, it is further noted (page 862):

§ 1477. Changing or correcting mistake as to name or description.

As a general rule a court will allow an amendment of the pleadings to change or correct the name of a corporate party, at least where the change does not have the effect of substituting another party (in jurisdictions not allowing a substitution of parties by amendment), and the court has jurisdiction over such party. *The courts have allowed amendments to strike a part of the name given a corporation so as to state the true name, to add to the name given a corporation a part necessary to give the true corporate name, to change a portion of a corporate name by substituting one or more words for others erroneously used, to change the whole corporate name, and even to change the state of incorpora-*tion. [Footnote references omitted. Emphasis added.]

Irrespective of the misnomer, the true identity of the protesting party and plaintiff in this civil action is readily ascertainable from the importer's identifying number appearing on the protests. which number corresponds to that appearing on Customs Form 5101 in the official papers. Such identifying number was furnished by plaintiff in its protests in accordance with the customs regulations. See 19 CFR §§ 24.5 and 174.-13(a)(2). While the Government has documented the fact that there happens to exist a New York corporation by the name of "Prestigeline, Inc.", there has been no showing that in fact such New York corporation was the party on whose behalf the four protests and the summons were filed.

Moreover, it may be observed that the customs officials considered and denied all of the protests on the merits and raised no question whatsoever concerning whether the protesting party was the importer or consignee in the four protests filed in the name of "Prestigeline, Inc." Ostensibly, then, "[t]he inaccuracy of the name sued in the [four] protest[s] was not such as to fail to disclose the real party in interest or to mislead the * * * Government." *Diamond Match Company, supra,* 49 CCPA at page 57.[3]

In short, I am clear that Prestigeline (Div. of Weiman Co., Inc.) was in point of fact the protestant in the four protests and is the actual plaintiff in the summons. The court, accordingly, has jurisdiction of this civil action.

This case, in which I find that four of the protests and the summons were filed on behalf of the importer but under a misnomer, is plainly distinguishable from the cases cited by defendant where no misnomer was involved.

---

**3.** It is also noted that at the outset, despite the importer's name appearing on the entry papers and its identifying number, the Bureau of Customs itself used the misnomer "PRESTIGE LINE INC." in its liquidation notices. However, there is no suggestion by plaintiff that such misnomer rendered those notices ineffectual.

Thus, in *Parksmith Corporation v. United States,* 73 Cust.Ct. 149, C.D. 4565 (1974), where the importer of record and the plaintiff in certain protests were ostensibly different corporations, and the plaintiff did "not come forward with even a single shred of evidence to clarify the doubts existing with regard to the jurisdiction of the court" (73 Cust.Ct. at page 149), the challenged protests were severed and dismissed. Judge Watson enunciated the applicable guidelines to be observed in situations such as the present (73 Cust.Ct. at page 150):

> In sum, my guidelines herein are as follows: If the jurisdiction of the court is challenged, as it has been here by defendant, the plaintiff must prove that jurisdiction exists. In this case it means that plaintiff must prove the existence of facts from which it can be reasonably concluded that the challenged protests were made and ultimately brought to court by the party allowed to do so under the law. *Without evidence of any sort, there is no need to discuss cases in which plaintiffs successfully rose to jurisdictional challenges.* [Cases cited. Emphasis added.]

Unlike the situation in *Parksmith,* from the importer's identifying number and from the affidavit of plaintiff's counsel, here "it can be reasonably concluded that the challenged protests were made and ultimately brought to court by the party allowed to do so under the law" (73 Cust.Ct. at page 150).

Again, unlike the present situation, in *Hersey of Canada, Ltd. v. United States,* 406 F.2d 1394, 56 CCPA 64, C.A.D. 955 (1969) and *Shigoto International Corp. v. United States,* 66 Cust.Ct. 252, C.D. 4199 (1971), cited by defendant, there was no showing that the importers in those cases or consignees had filed the actions under a misnomer.

Finally, in my recent opinion in *Hancock Gross Mfg., Inc. v. United States,* 75 Cust.Ct. ——, C.R.D. 75–6 (1975), wherein defendant's motion to dismiss for lack of jurisdiction was denied notwithstanding the misnomer in the pro-tests of the corporate plaintiff, it was stated (75 Cust.Ct. at page ——):

> While the carelessness displayed here respecting the proper naming of a corporate party in the protests is not "condoned", nevertheless I feel strongly that such technical error is properly amenable to correction. Thus, in *Wedemann & Godknecht, Inc.* Judge Rich, writing for the majority of our appellate court, very recently expressed the principle that section 514 was to be "liberally construed in furtherance of justice", and so far as pertinent here, also commented as follows (62 CCPA at [——]):
>
> > We do not mean by this opinion to condone slipshod performance by the customs bar in complying with the tariff statutes. If, as the Government would have us believe, filing of protests in the name of the wrong party is becoming a problem, we hope that the excessive litigation which has resulted from what was done in this case will be taken as a lesson. But we think the penalty should fit the crime and that FFB [Farbenfabriken Bayer, A.G.] should not have to foot the bill for improving professionalism in the customs bar and among brokers.

For the foregoing reasons, defendant's motion to dismiss the action is denied.

## CLASSIFICATION ISSUE

The "Multi-Lites" (or "Closet Lights") consist of battery-operated lamps or lighting fixtures designed to be attached to walls or ceilings in closets or elsewhere, and to be turned on and off by means of a pull-chain. Plastic is the component material of chief value.

The importations were assessed with duty at the rate of 8.5 per centum ad valorem under item 772.15 of the Tariff Schedules of the United States, as modified by T.D. 68–9. Plaintiff claims that the merchandise is properly dutiable at the rate of 5.5 per centum ad valorem under item 688.40, TSUS, as modified by T:D. 68–9.

The pertinent statutory provisions are:

Schedule 7, part 12, subpart C:

Articles chiefly used for preparing, serving, or storing food or beverages, or food or beverage ingredients; and household articles not specially provided for; all the foregoing of rubber or plastics:

| | | |
|---|---|---|
| 772.03 | Salt, pepper, mustard, and ketchup dispensers, and similar dispensers . . .  * * * | |
| 772.06 | Plates, cups, saucers, soup bowls, cereal bowls, sugar bowls, creamers, gravy boats, serving dishes, and platters . . . * * * | |
| 772.09 | Trays . . . * * * | |
| 772.15 | Other . . . | 8.5% ad val. |

Schedule 6, part 5:

| | | |
|---|---|---|
| 688.40 | Electrical articles, and electrical parts of articles, not specially provided for . . . 5.5% ad val. | |

The instant case presents no genuine issue as to any material fact, and the sole dispute concerns a question of law.

■ Fundamentally, as the "Multi-Lites" are describable as both "electrical articles" (item 688.40) and as "household articles" (item 772.15), the appropriate classification of the merchandise is under the tariff provision which describes it "with the greatest degree of accuracy and certainty". *United States v. Ampex Corp.,* 460 F.2d 1086, 59 CCPA 134, C.A.D. 1054 (1972); *United States v. Simon Saw & Steel Co.,* 51 CCPA 33, C.A.D. 834 (1964); General Interpretative Rule 10(c), TSUS. The foregoing principle, of course, is frequently referred to as the rule of "relative specificity".

The issue of relative specificity involving the provisions for "electrical articles" and "household articles", was raised in *L. Batlin & Son, Inc. v. United States,* 345 F.Supp. 996, 69 Cust.Ct. 14, C.D. 4365 (1972), *aff'd on other grounds,* 487 F.2d 916, 61 CCPA 17, C.A.D. 1111 (1973). In *Batlin,* decorative half bird cages with flowers and lights were classified as illuminating articles under item 653.40, TSUS, and were claimed by the plaintiff to be properly dutiable under item 688.40, TSUS. Defendant admitted that the classification under item 653.40 was erroneous, and as an affirmative defense asserted that since the bird cages were chiefly used in the household, they were more specifically provided for under the TSUS provisions for household articles, depending upon the component material of chief value, than under item 688.40. Respecting the relative specificity of those competing provisions, Judge Richardson held that the TSUS provisions for household articles are not more specific than the provisions of item 688.40.

The parties have called to the court's attention a number of decisions concerning the relative specificity of the provisions for "household utensils" and "articles having as an essential feature an electrical element or device" in paragraphs 339 and 353 respectively of the Tariff Act of 1930, predecessors of the present competing provisions. Although it was well settled prior to the effective date of the TSUS that lighting fixtures and lamps were properly dutiable under paragraph 397 of the 1930 act,[4] in the

---

4. Lighting fixtures and lamps were held properly dutiable under paragraph 397, the basket provision for metal articles, because of the legislative history of that paragraph. See *Biddle Purchasing Co. v. United States,* 50 CCPA 71, C.A.D. 823 (1963); *National Carloading Corp. v. United States,* 44 CCPA 77, C.A.D. 640 (1957); *United States v. N. Minami & Co., Inc.,* 29 CCPA 169, C.A.D. 188 (1941); *Silvine Importers, Inc. v. United States,* 59 Cust.Ct. 355, C.D. 3168 (1967); *Southwestern Electric Company,* 58 Cust.Ct. 134, C.D. 2906 (1967); and *Nife, Inc. v. United States,* 40 Cust.Ct. 570, Abs. 61976 (1958). But in *G. E. Meissner Co. v. United States,* 73 Treas.Dec. 791, T.D. 49556 (1938), so-called touch lamps were held properly dutiable under paragraph 339 as

"household utensils" rather than under paragraph 353 as "articles having as an essential feature an electrical element or device". The *Meissner* decision was predicated on the "rule" that "a use provision must prevail over one covering articles having as an essential feature an electrical element" (73 Treas.Dec. at page 793). It should be noted, however, that the *Meissner* decision antedated the above cited line of decisions which held that lighting fixtures and lamps were properly dutiable under paragraph 397. Moreover, the holding of *Meissner*—that paragraph 339 was more specific than paragraph 353—was rejected in *United States v. Electrolux Corp.,* 46 CCPA 143, C.A.D. 718 (1959).

context of the present competing TSUS provisions the rationale of the decisions which considered the relative specificity of paragraphs 339 and 353 is helpful in resolving the present case despite the change in statutory phraseology.

*United States v. Electrolux Corp.,* 46 CCPA 143, C.A.D. 718 (1959) is a leading case considering the relative specificity of paragraphs 339 and 353. There, the appellate court observed (46 CCPA at page 148):

> * * * Applying the latter rule [relative specificity], it seems to us that the appellee is on sound ground in contending that *"household utensils" is a very broad class indeed, aptly describing not only electrical appliances of all kinds but any useful tool, implement, instrument or vessel used in the household.* We are of the view that "articles having as an essential feature an electrical element or device," paragraph 353 more closely describes an electric floor polisher and we agree with appellee that *the latter provision is more specific because it is less easily satisfied.* * * * [Emphasis added.]

The rationale of *Electrolux* that electrical household appliances are more specifically described by paragraph 353 than paragraph 339 was followed in a long line of decisions involving: battery-operated vacuum brushes (*Bruce Duncan Company, a/c Sims-Worms v. United States,* 45 Cust.Ct. 85, C.D. 2202 (1960)); food juicers (*Rotel Corp. of America v. United States,* 46 Cust.Ct. 538, Abs. 65798 (1961)); battery-operated night lamps (*Southwestern Electric Company v. United States,* 58 Cust.Ct. 134, C.D. 2906 (1967)); battery-operated Christmas tree and Santa Claus lanterns (*John A. Steer Company v. United States,* 53 Cust.Ct. 229, Abs. 68673 (1964)); battery-operated mixmasters (*F. B. Vandegrift & Co., Inc. v. United States,* 53 Cust.Ct. 231, Abs. 68674 (1964)); and face massagers (*Seprol, Inc. v. United States,* 48 Cust.Ct. 480, Abs. 66856 (1962)).

▮ Following the rationale of *Electrolux,* I have determined that the term

"household articles" represents "a very broad class", while the term "electrical articles" "is less easily satisfied". Consequently, I hold that the "Multi-Lites" are more specifically described by item 688.-40 than by item 772.15.

Defendant strenuously argues that classification of the imports under item 772.15 is compelled by the fact that "household articles" is a "use" designation, while item 688.40 is a descriptive provision. However, I have noted that a similar contention was unsuccessfully urged before the Court of Customs and Patent Appeals in *Electrolux* respecting paragraph 339 of the 1930 act, and before Judge Richardson in *Batlin* respecting the TSUS provisions for "household articles".

Additionally, there is no merit to defendant's contention that item 772.15 is more specific than item 688.40 because the former provision is limited by component material of chief value (rubber or plastics). Citing its *Electrolux* holding and additional cases, the appellate court in *Simon Saw & Steel Co.* held that the provision in paragraph 340 of the 1930 act for circular saws was "narrower in scope and is more limited in its application to different articles" than was the provision in paragraph 352 for cutting tools of any kind, notwithstanding that the latter provision was a "use" provision, and was limited to tools containing alloying materials exceeding certain specified percentages.

▮ Hence, in view of the *Electrolux, Simon Saw* and *Batlin* decisions, it is clear that a use provision limited by component material of chief value is not *ipso facto* more specific than a descriptive provision having a relatively more narrow and limited application.

Moreover, the following comments of the Tariff Commission in the *Summaries of Trade and Tariff Information* (1968), schedule 7, volume 7, pages 65–68, while not conclusive, are indicative of the nonelectrical nature of the rubber or plastics articles which the drafters of the

tariff schedules intended should be covered by item 772.15:[5]

*Description and uses*

This summary covers: (1) Rubber or plastics articles that are chiefly used for preparing, serving, or storing food or beverages, or food or beverage ingredients and are specially provided for in the tariff schedules (TSUS items 772.03–.09) (2) Rubber or plastics articles that are not specially provided for either under 772.03–.09, or elsewhere in the tariff schedules (TSUS item 772.15). The first group consist chiefly of melamine dinnerware. Such dinnerware is made from melamine synthetic resin and is characterized by its resistance to heat and food acids. *Among the variety of heterogeneous articles included in the second group are coasters, tumblers, decorative toothpicks, soap dishes, salad sets, waste baskets, garment protectors, and miscellaneous containers except those used for the packing, transporting, or marketing of merchandise.* Both groups include articles used in establishments such as restaurants, cafeterias and institutions, as well as in the home. [Emphasis added.]

Somewhat related rubber or plastics articles covered in other summaries include: containers chiefly used for the packing, transporting, or marketing of merchandise (item 772.20); buckets or pails (item 772.25); curtains, drapes, napkins, table covers, doilies, furniture slipcovers, and similar articles (item 772.35); and caps, lids, seals, stoppers, and other closures (item 772.85).

\*    \*    \*    \*    \*    \*

*U. S. Imports*

\*    \*    \*    \*    \*    \*

As is shown in table 3, somewhat more than 80 percent of the value of the imports under consideration has been made up of a miscellaneous group of rubber and plastics housewares (TSUS item 772.15). *Some of the more important of these articles known to have been imported in 1966 were: bathmats, mattress and pillow covers, tumblers, planters, garment bags, flower pots, drinking cups, lampshades, towel racks, and salad bowl sets.* \* \* \* [Emphasis added.]

Significantly, among the many examples of the rubber and plastics articles covered by the summary under item 772.15, and the related rubber and plastics articles covered in other summaries, not a single electrical article is mentioned. The absence of any mention of electrical household articles is consistent with the conclusion reached herein that such articles are properly dutiable under item 688.40.

■ Finally, it should be noted that schedule 6, part 5 of the tariff schedules provides *eo nomine* for many household electric articles. See e. g. items 683.30, 683.32, 684.20, 684.30 and 684.50. Thus, there is no doubt Congress intended that item 688.40 should cover household electric articles not specially provided for.

In summary, I find that there is no genuine issue of fact to be tried in this case; and that as a matter of law the "Multi-Lite" articles, assessed with duty at the rate of 8.5 per centum ad valorem under item 772.15, TSUS, as modified by T.D. 68–9, are properly dutiable at the rate of 5.5 per centum ad valorem under item 688.40, as modified by T.D. 68–9, as claimed by plaintiff. Accordingly, it is hereby Ordered that:

Plaintiff's name in the caption of this action is amended to read: "Prestigeline (Div. of Weiman Co., Inc.)";

Plaintiff's motion for summary judgment is granted;

---

**5.** The *Summaries of Trade and Tariff Information* have been referred to by our appellate court as an aid in determining the scope of tariff provisions. See e. g., *American Bristle & Hair Drawing Co., Keer Maurer & Co. v. United States,* 458 F.2d 524, 527, 59 CCPA 104, 108, C.A.D. 1048 (1972); *Tanross Supply Co., Inc. v. United States,* 433 F.2d 1332, 1336, 58 CCPA 26, 31, C.A.D. 1000 (1970). See also *Lyons Export & Import, Inc. v. United States,* 461 F.2d 830, 831, 59 CCPA 142, 144, C.A.D. 1056 (1972).

Defendant's cross-motions for summary judgment and dismissal are denied;

The regional commissioner of customs at the port of New York shall reliquidate the entries covered by this civil action in accordance with this decision.

Judgment will be entered accordingly.