The **HARTZ MOUNTAIN CORPORATION,** Plaintiff,

v.

**UNITED STATES, Defendant.**

Slip Op. 95–154.
Court No. 91–12–00877.

United States Court of International Trade.

Sept. 1, 1995.

58

Kuhn and Muller (Edwin C. Bullock), New York City, for plaintiff.

Frank W. Hunger, Assistant Attorney General; Joseph I. Liebman, Attorney-in-Charge, International Trade Field Office, Civil Division, United States Department of Justice (Edith Sanchez Shea); Office of the Assistant Chief Counsel, International Trade Litigation, United States Customs Service (Laura R. Siegel and Sheryl A. French), of counsel, for defendant.

## MEMORANDUM and ORDER

GOLDBERG, Judge:

This matter is before the Court on the parties' cross-motions for summary judgment. The Court exercises its jurisdiction pursuant to 28 U.S.C. § 1581(a) (1988).

## BACKGROUND

Plaintiff, the Hartz Mountain Corporation ("Hartz"), and defendant agree that this case involves the proper tariff classification of the following merchandise: (1) a molded toy "Dog Bone"; (2) a "Refillable Catnip Punching Ball"; (3) a "Seed Tree with Holder," for use by indoor or outdoor birds; (4) a clear tube called a "Hamster & Gerbil Tunnel," for use in certain hamster and gerbil cages; (5) an item used to connect such tubes, called a "Hamster & Gerbil 'T' Connector"; and (6) a "Play City Bottle Holder," which holds water

bottles in certain hamster and gerbil cages. (Mem. in Supp. of Pl.'s Mot. for Summ.J. ("Pl.'s Brief"), Exhibits A–E; Pl.'s Statement of Material Facts Not in Issue ("Pl.'s Undisputed Facts") at 1; Def.'s Statement of Undisputed Facts ("Def.'s Undisputed Facts") at 1–2.) The parties also agree that all of these items are made of plastic. (Pl.'s Undisputed Facts at 1; Def.'s Undisputed Facts at 1–2.)

The subject merchandise was imported from Korea and entered at the port of Newark, New Jersey in 1990. The United States Customs Service ("Customs") classified the merchandise under subheading 3926.90.90 of the *Harmonized Tariff Schedule of the United States* (1990) ("HTSUS"), as "[o]ther articles of plastics and articles of other materials of headings 3901 to 3914 ... Other ... Other" ("other articles of plastic"), with an *ad valorem* duty rate of 5.3 percent. Hartz filed protests claiming that the merchandise should instead be classified under subheading 3924.90.50, HTSUS, as "[t]ableware, kitchenware, other household articles and toilet articles, of plastics: ... Other ... Other" ("other household articles of plastic"), with an *ad valorem* duty rate of 3.4 percent. After Customs denied Hartz's protests, Hartz filed this action, and both parties now move for summary judgment.

### DISCUSSION

When faced with a motion for summary judgment, the Court determines whether a case presents any genuine issues of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). If the Court finds that the case lacks genuine issues of material fact, and that the moving party is entitled to judgment as a matter of law, then the Court may grant summary judgment. USCIT Rule 56(d).

■ Customs' classification of the merchandise under subheading 3926.90.90, HTSUS, is afforded a statutory presumption of correctness. 28 U.S.C. § 2639(a)(1) (1988). Hartz, as the challenging importer, has the burden of overcoming this initial presumption. *Id.; see, e.g., Jarvis Clark Co.*

*v. United States,* 2 Fed.Cir. (T) 70, 75, 733 F.2d 873, 877–78 (1984).

### A. The Subject Merchandise Falls Within The HTSUS Category For "Other Household Articles Of Plastic."

In making its motion for summary judgment, Hartz contends that the items at issue fall within the HTSUS category for "other household articles of plastic" because they are of the same class or kind as plastic articles principally used in the American household at the time of importation. In its motion, defendant contends that the subject imports cannot be classified as "other household articles of plastic" because they do not fall within the common definition of "household articles."

■ "Household" is a broad term; the dictionary defines it as "of a household or home; domestic." *Webster's New World Dictionary of American English* 654 (3d College ed. 1988). When "household" is used in conjunction with the term "articles" in subheading 3924.90.50, HTSUS, a use provision is created. *See, Prestigeline v. United States,* 75 Cust.Ct. 139, 147–48, 406 F.Supp. 532, 538 (1975). Classification under this kind of use provision is determined by the *principal* use in the United States, at the time of importation, of the class or kind of goods to which the imported goods belong. *Harmonized Tariff Schedule of the United States, Additional U.S. Rule of Interpretation* 1(a) (1990) (emphasis added). Hence, "other household articles of plastic" describes plastic articles of the class or kind principally used in the American household at the time that the subject merchandise was imported.

■ In order to determine whether the subject merchandise falls within the same class or kind as plastic articles that were principally used in the American household at the time of importation, the Court will examine the merchandise in light of pertinent factors. *United States v. Carborundum Co.,* 63 C.C.P.A. 98, 102, 536 F.2d 373, 377 (1976), *cert. denied,* 429 U.S. 979, 97 S.Ct. 490, 50 L.Ed.2d 587 (1976). These factors include: (1) the use, if any, in the same manner as merchandise which defines the class; (2) the expectations of the purchasers of the mer-

chandise; (3) the channels of trade in which the merchandise moves; and (4) the environment of the sale of the merchandise, i.e. the accompanying accessories and the manner in which the merchandise is advertised and displayed.[1] *Carborundum,* 63 C.C.P.A. at 102, 536 F.2d at 377; *Lenox Collections v. United States,* 19 CIT ——, ——, slip op. No. 95–36 at 5, 1995 WL 106982 (Mar. 9, 1995). Upon review, the Court finds that the pertinent factors indicate that the items at issue fall within the definition of household articles of plastic.

First, the undisputed facts show that like other household articles of plastic, the pet toys and supplies at issue are used in the home. The parties agree that the imports are used by household pets such as dogs, cats, birds, hamsters, and gerbils. (Pl.'s Undisputed Facts at 1; Def.'s Undisputed Facts at 1; Def.'s Statement of Additional Undisputed Facts at 1.) By definition, household pets live in the area of their owners' homes. Consequently, the items at issue are commonly used in the area of the home.

Second, the undisputed facts show that purchasers of the subject merchandise expect to use the merchandise in the area of their homes. The parties agree that people generally purchase the subject merchandise for use by their pet dogs, cats, birds, gerbils, and hamsters. (Pl.'s Undisputed Facts at 1; Def.'s Undisputed Facts at 1; Def.'s Statement of Additional Undisputed Facts at 1.) Because these pets live in the area of their owners' homes, the purchasers must expect that the merchandise will be used in the area of the home.

Third, the undisputed facts demonstrate that the particular pet accessories at issue move through the same channels as other household articles of plastic. Hartz sells the subject merchandise to "mass merchandisers, supermarkets, variety stores, and drug chains which in turn sell these products at retail directly to consumers." (Pl.'s Brief, Sesholtz Aff. at 2.) Hence, the subject merchandise is sold in the same places as other recognized household items, such as plastic ash trays and hot water bottles. The subject pet accessories are not sold through more specialized channels, such as veterinary clinics.

Fourth, the plastic items at issue are advertised and presented to consumers as articles for use in the area of the home. For example, the "Dog Bone" comes in a package that says, "satisfy your pet's urge to chew," and as the Court has noted, one's pet generally lives in the area of one's home. (Pl.'s Brief, Ex. A.) The packages that hold the "Refillable Catnip Punching Ball," "Hamster & Gerbil Tunnel," and "Hamster & Gerbil 'T' Connector" similarly indicate that they are to be used by pets. (*Id.* at Ex. B, D, E.) Further, the carton for the "Seed Tree with Holder" provides information on how to put the plastic holder in a bird cage, and it is decorated with a picture of a parakeet and a canary, two birds that are rarely found outside the home in America. (*Id.* at Ex. C.)

▮ In sum, pertinent factors indicate that the items at issue may be described as "other household articles of plastic." Indeed, the Court notes that Customs has classified other pet accessories as household articles. For example, Customs has determined that ceramic cat and dog food bowls "are of the class or kind that will be principally used in the household area" and are therefore classified as "other ceramic household articles." Priv.Ltr.Rul. 882926 (Mar. 9, 1993); *see also* Priv.Ltr.Rul. 883080 (Mar. 18, 1993) (finding that ceramic jars for pet treats should be classified as "other ceramic household articles"); Priv.Ltr.Rul. 089558 (Jul. 2, 1991) (finding that dog "weatherbeds" should be classified as "other household articles of steel"). While Customs' rulings are not binding on this Court, particularly when they deal with classifications different than those at issue, the Court finds the reasoning that Customs employed in reaching these pet accessory rulings noteworthy. *See C.J. Tower & Sons v. United States,* 33 Cust.Ct. 14, 17, C.D. 1628 (1954) (discussing the non-binding nature of Customs' rulings).

---

1. The Court notes that other factors, such as the physical appearance of the merchandise, may also be pertinent to the determination of the class to which a particular import belongs. *Carborundum,* 63 C.C.P.A. at 102, 536 F.2d at 377.

1. *The Subject Merchandise Is Of The Same Kind As Other Household Articles Of Plastic Identified In The Explanatory Notes.*

■ Defendant argues that Customs should not classify the subject merchandise as "other household articles of plastic" because it is not of the same kind as items identified in the Explanatory Notes for that heading; the Explanatory Notes identify, for example, ash trays, hot water bottles, and matchbox holders. The Court notes that the Explanatory Notes are not legally binding. *Lynteq, Inc. v. United States,* 10 Fed.Cir. (T) ——, 976 F.2d 693, 699 (1992). However, recognizing that the Explanatory Notes are generally indicative of the interpretation of HTSUS headings, the Court will consider defendant's argument. *Id.* Upon review, the Court finds that the various articles identified as "other household articles of plastic" are extremely diverse. The only characteristic that items such as ash trays, hot water bottles, and matchbox holders share is that they are all plastic items principally utilized in the area of the home. Because the subject merchandise also consists of plastic items principally utilized in the area of the home, defendant's attempt to argue that the subject merchandise is not of the same kind as articles enumerated in the Explanatory Notes for "other household articles of plastic" must fail.

2. *The Explanatory Notes Fail To Show That Customs Should Refrain From Classifying The Subject Merchandise As "Other Household Articles Of Plastic."*

Defendant also argues that the Explanatory Notes for "other articles of plastic" indicate that Customs should refrain from classifying the pet toys and accessories at issue as "other household articles of plastic." More specifically, defendant argues that the Explanatory Notes show that miscellaneous articles that are used in the home, such as aprons, baby bibs, and glides for placing under furniture, are classified as "other articles of plastic," rather than as "other household articles of plastic." Therefore, according to defendant, even if the subject merchandise is used principally in the home, Customs should classify it as "other articles

of plastic," so as not to stretch the definition of "household articles."

While the Court notes that Explanatory Notes are not legally binding, it will consider defendant's argument because the notes are generally indicative of the proper interpretation of HTSUS provisions. *Lynteq, Inc.,* 10 Fed.Cir. (T) at ——, 976 F.2d at 699. The Explanatory Notes expressly provide that the category for "other articles of plastic" includes "articles of apparel and clothing accessories (other than toys) . . . and fittings for furniture." Hence, the Explanatory Notes indicate that particular items used in the home, such as aprons, baby bibs, and glides for placing under furniture, should be classified as "other articles of plastic." The Explanatory Notes do not, however, indicate that the pet toys and supplies at issue must be classified as "other articles of plastic." Consequently, the Court finds that the Explanatory Notes for "other articles of plastic" fail to indicate that Customs should refrain from classifying the subject merchandise as "other household articles of plastic."

B. *"Other Household Articles Of Plastic" Is A More Specific Provision Than "Other Articles Of Plastic."*

■ The Court has found that the subject merchandise may be described as "other household articles of plastic," but it also recognizes that the merchandise may be described as "other articles of plastic." When an article is described in more than one provision of a tariff act, it is to be classified under the provision which most specifically describes it. *Harmonized Tariff Schedule of the United States, Gen. Rule of Interpretation* 3(a) (1990). The parties and the Court agree that the provision for "other household articles of plastic" is more specific than the provision for "other articles of plastic"; indeed, the Explanatory Notes indicate that the provision for "other articles of plastic" covers articles not elsewhere included. (Compl. and Answer, ¶ 16.) Consequently, the Court finds that Hartz has overcome the presumption of correctness, and that the pet toys and supplies at issue are properly classified as "other household articles of plastic" under subheading 3924.90.50, HTSUS, with an *ad valorem* duty rate of 3.4 percent. Wherefore, it is hereby

ORDERED that defendant's motion for summary judgment is DENIED; and it is further

ORDERED that plaintiff's motion for summary judgment is GRANTED. Judgment will be entered accordingly.

### ORDER

This case having come before the Court on the parties' cross-motions for summary judgment, and the Court, after due deliberation, having granted plaintiff's motion; now, in conformity with said decision, it is hereby

**ORDERED, ADJUDGED and DECREED:** that classification of the subject merchandise by the United States Customs Service ("Customs") under subheading 3926.90.90 of the Harmonized Tariff Schedule of the United States ("HTSUS") is reversed; it is further

**ORDERED, ADJUDGED and DECREED:** that Customs shall reliquidate the entries of the subject merchandise at issue in this case under subheading 3924.90.50, HTSUS, at a duty rate of 3.4 percent *ad valorem*, and shall refund all excess duties paid with interest as provided by law. Judgment is hereby entered for plaintiff.